179 So.2d 710

Clarence Cecil COON

v.

STATE.

2 Div. 474.

Supreme Court of Alabama.

Sept. 30, 1965.

Rehearing Denied Nov. 18, 1965.

Richmond M. Flowers, Atty. Gen., and Leslie Hall, Asst. Atty. Gen., for the State.

Hubbard H. Harvey, Demopolis, for appellant.

HARWOOD, Justice.

This appellant, Clarence Cecil Coon, has been adjudged guilty of murder in the first degree of Leonard Culpepper and sentenced to death.

Coon being unable to employ counsel, the court, prior to appellant's arraignment, appointed a member of the Marengo County bar to represent him.

Upon arraignment, appellant, through counsel, entered pleas of not guilty, and not guilty by reason of insanity.

This appeal is here under our automatic appeal statutes, and the counsel who represented the appellant in the trial below has filed a brief in his behalf in this court.

On the day of arraignment, counsel for appellant filed two motions in appellant's behalf, one for a change of venue, and the other for the appointment of specialists to examine appellant's mental condition. Each of these motions was denied by the court prior to trial.

At the hearing on the motion for a change of venue, the appellant presented some four citizens of Sumter County. Each of such witnesses presented by appellant testified that in their opinion the appellant could secure a fair trial in Sumter County. There was no evidence otherwise. Clearly in this state of the record no reversible error can be said to infect the trial court's action in overruling the motion for a change of venue. Denton v. State, 263 Ala. 311, 82 So.2d 406.

As to the motion to appoint three reputable specialist practitioners in mental and nervous diseases to examine appellant, we point out at the threshold of our consideration of this point that the court was under no duty to appoint a lunacy commis-

sion or to procure a report of the Superintendent of the Alabama State Hospital under the provisions of Section 425, Title 15, Code of Alabama 1940. The court has the right, but not the duty, to seek these aids for advisory purposes when *in the discretion* of the court it considers such aid will be helpful. Howard v. State, ante p. 361, 178 So.2d 520, decided 30 June 1965, and cases cited therein.

Further, the only evidence offered in support of his motion for the appointment of three specialists in mental diseases was the testimony of the appellant himself. His testimony took a wide sweep, and was to the effect that his family moved to California when he was a baby and he has spent most of his life in that state; he has had eleven years in school, of which three years were in high school in California. His grades were C's and E's.

He first got into trouble when he was 15 years old when he, his brother and sister, twice broke into a frozen food establishment and took some frozen foods; then he went into the girl's gymnasium at his school and took money out of purses he found therein. For this offense he was sent to something "like a correctional home" and was supposed to stay there until he was 21. However, while at the correctional home, he and two other boys went into a church and took some money. For this offense he was put in a reformatory. After about three months in the reformatory his probation officer placed him in a mental institution near San Francisco. There never were any court proceedings committing him to this mental institution and after about two months he was released to the custody of his parents. At the institution they gave him "block tests and they give you a piece of paper with garbs of ink smeared on it and such as that and they ask you a lot of questions." When he was about 19 years of age he left his home and started "bumming around." In Montana he stole fifteen dollars out of a man's wallet and for this he was given a 30 day suspended sentence and told to "get out of there." He then went to Wyoming where he broke

584

into a creamery and stole some money. He was sentenced to 90 days for this offense. In 1961 he had worked for a T. V. store in Las Vegas, Nevada, and when he left this employment he took the key to the store with him. After about three months he entered this store with the key on four different occasions and took money out of the cash register. He was sentenced to 15 years in the penitentiary for this offense, but after one year he was released from the penitentiary.

After this he worked for various carnivals and in Houston, Texas, while working for the Max Harris shows he and three companions set out for Tennessee. On their travels they burglarized a house in Texas and one in Oklahoma. On their route to Tennessee they drove into Alabama when they concluded they were being followed by a highway patrolman.

While the appellant's testimony tends to show a criminal career on the appellant's part since he was quite young, there is nothing in his testimony of real probative value tending to establish insanity other than his testimony to the effect that he was placed in a mental institution by his probation officer in California. Even so, he was released from this institution after about two months. This evidence is indeed weak in tending to establish legal insanity on the part of the appellant.

In rebuttal to the appellant's evidence presented to establish his insanity, the state presented as witnesses Melvin Stephens, Sheriff of Sumter County, Arthur Guellett and James W. Briggs, transfer agents for state prisoners, and Dr. C. E. Kimbrough, a practicing physician in Marengo County. All of these witnesses testified that they had observed the appellant since he had been returned to Alabama after his arrest in Texas, and that in their opinion he was of sound mind.

It would thus appear that even under the appellant's evidence taken in connection with the motion for the appointment of a lunacy commission to examine the appellant, the lower court was fully justified in denying the motion. However, as before stated, the question of the appointment of medical specialists in mental disorders in response to the motion was solely within the discretion of the trial court.

The record shows beyond a shadow of a doubt that this appellant and his three companions, Dezso John Lokos, Gerald Eaton, and Harold Edwards acted in full and complete concert in the burglarizing of the Leonard Culpepper home and the unprovoked and atrocious murder of Mr. Culpepper during the commission of the burglary. Each of these accomplices was indicted separately for murder in the first degree, and each has been tried separately and found guilty of murder in the first degree and sentenced to death.

In the case of Eaton v. State, Ala., 177 So.2d 444,[1] we reversed the judgment because of the improper argument of the solicitor to the jury. No such point occurred in the present case. However, in the Eaton case we set out the facts and circumstances of the conduct of the quartet, which of course included this appellant in murdering Mr. Culpepper. We see no purpose in again repeating these facts in that they are equally applicable to this appellant with the exception that in the present case the appellant and his accomplice, Edwards, forced Mrs. Culpepper into the Ford automobile and drove to the well, following the automobile containing Mr. Culpepper and the accomplices, Eaton and Lokos.

These facts clearly establish this appellant's guilt of murder in the first degree.

This court is today handing down its judgment and opinion in the case of Lokos v. State, Ala., 179 So.2d 714.[2] Every point raised and discussed in the Lokos case is identical with the questions raised by the

1. Ante, p. 224.

2. Ante, p. 586.

present record with one or two exceptions which will be adverted to hereafter.

The opinion in the Lokos case was written by Justice Lawson with painstaking care. He has fully discussed each point so raised and the legal principles governing. To write to these points in this opinion would be a mere reiteration of the matters written to in the Lokos opinion, and we will therefore refrain from this unnecessary repetition, by hereby adopting the language of Justice Lawson as applicable to the present case, as to the points written to by him.

In the present case counsel for appellant raises an additional point that this appellant was denied due process of law because he was tried at a Special Session of the 1964 Spring Term in the Circuit Court of Sumter County. In support of this contention counsel for appellant cites only the 14th Amendment of the United States Constitution.

Section 69, Title 30, Code of Alabama 1940 provides:

"The court may, on any day of the session, fix the time for the trial of any capital case or cases for any subsequent day of the session."

■■ Our cases are to the effect that on a trial under an indictment charging a capital offense, the record must affirmatively show the defendant was personally present at the time the date of trial was fixed, and must affirmatively show such order. Spicer v. State, 69 Ala. 159; Corbett v. State, 38 Ala.App. 536, 91 So.2d 503. Such matters are affirmatively shown in the present record.

■ Terms of court have been abolished. Section 114, Title 13, Code of Alabama 1940. The word "session" as it appears in Section 69, supra, means any period of time fixed by the court for the trial of cases or the transaction of any other business. See Mann v. State, 265 Ala. 441, 91 So.2d 689.

No error attached to the court's action in setting the trial of this case.

Counsel for appellant also contends that the court erred in denying the appellant's motion for a new trial because it was impossible for the appellant to receive a fair trial in view of the fact that the then sheriff of Sumter County, Mr. W. A. Bratton, died while testifying as a witness at the preliminary hearing accorded the appellant.

Ground 21 of appellant's motion for a new trial is to the effect that the death of Sheriff W. A. Bratton while being cross-examined by defendant's attorney so inflamed the citizens and prospective jurors that a fair trial could not be accorded the appellant.

During the hearing of the motion for the appointment of specialists to examine into the mental condition of the appellant, Melvin Stephens, Sheriff of Sumter County, testified that he had been chief deputy sheriff for W. A. Bratton, who had died 27 December 1963, and that he (Stephens) had been sheriff since 31 December 1963.

■ This is the only reference in the record as to Sheriff Bratton's death. The circumstances of his death are de hors the record. If evidence was taken on the matter at the hearing on the motion for a new trial, such evidence does not appear in the record.

In this state of the record there is nothing presented for our review in this instance.

Further, since Ground 21 of the motion for a new trial asserts that Sheriff Bratton died while being cross-examined by the defendant's attorney, it must be concluded that Sheriff Bratton was presented as an adversary witness by the state, and was not a witness for the appellant. It would appear that his death would handicap the state rather than the appellant. Whether his death inflamed the citizens and prospective jurors against this appellant is in the realm of speculation and surmise only. No error is made to appear in this instance.

Affirmed.

LIVINGSTON, C. J., and LAWSON, GOODWYN, MERRILL and COLEMAN, JJ., concur.