185 So.2d 393

**Harold Leon EDWARDS**

v.

**STATE of Alabama.**

2 Div. 475.

Supreme Court of Alabama.

March 3, 1966.

Rehearing Denied and Opinion Extended

April 15, 1966.

Hubbard H. Harvey, Demopolis, for appellant.

Richmond M. Flowers, Atty. Gen., and Leslie Hall, Asst. Atty. Gen., for the State.

COLEMAN, Justice.

From conviction for murder, defendant automatically appeals. Act No. 249, General Acts 1943, page 217; Code 1940, Recompiled 1958, Title 15, § 382(1) et seq.

Defendant pleaded not guilty and not guilty by reason of insanity.

Ground 18 of the motion for new trial is that "defendant was prejudiced by being brought before the Court and potential jurors in handcuffs, leg irons, and chains."

We are not persuaded that reversible error is shown by the mere assertion that defendant was manacled when brought into court. This court has said:

"There is a marked distinction between handcuffing a prisoner in carrying him to and from the court trying him and then immediately removing it and in keeping him in shackles or in handcuffs while being tried. This should not be done. unless the situation creates a reasonable belief that such restraint is necessary to prevent his escape, or his rescue. Faire v. State, 58 Ala. 74." Smith v. State, 247 Ala. 354, 357, 24 So.2d 546, 548.

In this connection, see State v. Roberts, 86 N.J.Super. 159, 206 A.2d 200, where numerous authorities are cited and discussed.

Briefly, the evidence for the state tends to show that defendant, together with three companions, Eaton, Coon, and Lokos, took a husband and wife, shot the husband, and then threw husband and wife into a well in a churchyard. The wife survived, the husband died. Defendant has been convicted and sentenced to die for murdering the husband.

An account of the facts is set out in Eaton v. State, 278 Ala. 224, 177 So.2d 444, and repeated in Lokos v. State, 278 Ala. 586, 179 So.2d 714. To these opinions we refer for greater detail. See also Coon v. State, 278 Ala. 581, 179 So.2d 710.

The evidence favorable to defendant is to effect that he was an unwilling member of the group, that Lokos and Eaton had threatened defendant, and that defendant did not in his own person participate in shooting the deceased or in putting him or his wife in the well.

On rebuttal, the state, by the witnesses Smith and Dearman, introduced evidence that Coon had made four statements which tend to show that the defendant, Edwards,

did, in his own person, voluntarily participate in the criminal acts which were committed and did personally join the other three in putting the body of deceased in the well.

■ On each occasion when the questions were asked calling for the four statements made by Coon, defendant objected, largely on the ground that proper predicate had not been laid. It may be that the predicate referred to by counsel for defendant was a predicate to show voluntariness, but that predicate is not the one which we think was necessary and which was not laid. We think the testimony of Smith and Dearman, showing that Coon had made the four statements which incriminate the defendant Edwards, was not admissible because Coon had not first been asked whether he made at least two of the contradictory declarations attributed to him by Smith and Dearman.

■ It is established that under the automatic appeal statute, this court may, at its discretion, consider any testimony that was seriously prejudicial to the rights of appellant, and may reverse thereon, although no lawful objection or exception was made thereto. Alberson v. State, 254 Ala. 87, 47 So.2d 182; Dockery v. State, 269 Ala. 564, 114 So.2d 394.

The testimony of Coon supported defendant's contention that he did not, of his own volition, participate in the criminal act. The testimony, that Coon had previously made contrary declarations out of court, was, as it seems to us, seriously prejudicial to appellant, and, if erroneously admitted, as we think it was, requires a reversal of the judgment appealed from.

We summarize the testimony of Coon. On direct examination, he testified that he was one of the four defendants in this matter, that defendant Edwards applied a towel to Mrs. Culpepper's head, that the four came to Alabama around December 12, and spent the night at a church, that Lokos and Eaton made threats towards defendant

Edwards, that they said "'You can walk out but you wouldn't get very far,'" that the quoted statement was directed to Edwards and Coon, that Edwards did not strike anybody in the Culpepper house, that Coon did not remember whether Edwards had a gun at the Culpepper house, that Edwards did not help to place Mr. or Mrs. Culpepper in the well, that Edwards did not shoot anybody, that Lokos killed Mr. Culpepper so far as Coon knew.

On cross-examination, Coon testified that he had made a statement in Texas about Eaton and Lokos threatening him, that Coon did not tell Major Jones about Eaton and Lokos threatening Coon, that he thinks he said something about the threats when the solicitor questioned Coon in the Marengo County Jail "in the presence of Mr. Stevens and Mr. Bratton," that the solicitor had questioned Coon only one time, that he remembers Dr. Kimbrough, that Coon made a statement to the solicitor that Eaton and Lokos had threatened Coon, that he does not remember whether the two Stevens were present, that the solicitor questioned Coon only one time, that Coon did not make the statement "to us" [solicitor, Stevens, Bratton (?)] that each of the four had guns and that Edwards had a 20-gauge shotgun, that Coon was the one that had the 20-gauge shotgun, that Edwards did not have any gun but had only a big ring of keys, that Edwards was not the one who suggested to go into these two houses, that Edwards did not say at the well that that would be a good place to put somebody or words to that effect, that Edwards did not say that that was a good automobile and a good time to swap automobiles and get the Culpepper automobile. Coon also testified:

"Q. Now you say that Edwards did not have a gun and on direct examination just a few minutes ago, didn't you state that you didn't remember whether he had a gun or not? Which is right? When Mr. Harvey asked you, you said you didn't remember whether he had a gun, and and when I asked you, you said

positively he didn't have anything but a ring of keys; which is right?

"A. That I ain't sure of."

Coon further said that he did not remember whether Mr. Culpepper's watch was taken off his arm because Coon was not in the room when "they" searched Culpepper, that Coon does not know whether Edwards was with Coon or not, that Coon did not see Culpepper tied up, that Coon was in the bedroom, that "this statement" was read to Coon, that Coon did not read the statement, that the signature to "this statement" is Coon's signature to the best of his knowledge, that Coon "said three of us and that guy put all four of us," that Coon will stand on the 5th Amendment.

### First Statement.

The examination of Coon then proceeds as follows:

"Q. Didn't you make a statement when we questioned you and asked you about this; Mr. Dick Smith was present at the time, and didn't you make that statement in the presence of Mr. Dick Smith, one of the newspaper men, that, when Mr. Culpepper came in the house, Edwards ran around behind him and put a 410 gauge shot gun in Mr. Culpepper's back?

"MR. HARVEY: We object. Just a minute. Don't answer, please. Now your Honor, he says that the statement was made to Mr. Dick Smith, and we object to that question as to what he said to Mr. Dick Smith.

"COURT: No sir.

"SOLICITOR: In Mr. Dick Smith's presence.

"MR. HARVEY: That's hearsay evidence, your Honor.

"COURT: He is asking this witness if he made that statement in the presence of Mr. Dick Smith.

"MR. HARVEY: It's inadmissible evidence, your Honor.

"COURT: No sir. Overrule the objection.

"MR. HARVEY: We except.

"Q. Didn't you make that statement in the presence of Mr. Dick Smith that, when Mr. Culpepper came in the house, Edwards ran around behind and put a shot gun in his back?

"A. I did not."

Coon further testified that Edwards had nothing to do with carrying "them out to the car," that Coon and Eaton carried them out, that Lokos and Eaton took Mr. Culpepper out to the automobile and Coon and Eaton carried out Mrs. Culpepper, that Edwards was then in the house, that the Oldsmobile left first, that Coon drove the Ford to the well with Mrs. Culpepper and Edwards, that the only thing wrong with the Ford was that the generator wouldn't work, that the Ford was about 300 yards behind the Oldsmobile, that Coon was watching the highway and did not know whether Edwards had a gun in his hand or not, that they had some guns "all on the back seat," that there were five or six guns, they were "Twenty-twos and shot guns," that Coon drove the car to the well, that he did not know they were heading in that direction.

### Fourth Statement.

The following then occurred:

"Q. Didn't you also make the statement in the presence of Mr. Stevens the one time that I questioned you in the Marengo County jail there at Linden, in the presence of Mr. Langford Stevens and Mr. Melvin Stevens and Mr. Bill Bratton, didn't you make the statement to us that at that time you all had planned to put somebody in the well that night and said you were going to put somebody in the well

that night? Didn't you make that statement there in the Marengo County jail, that all of you had planned that?

"A. I didn't say all of us planned it.

"Q. What did you tell us?

"A. I said Lokos and Eaton was the ones that was planning on it.

"Q. You said Lokos and Eaton? Isn't it a matter of fact that you said all of you had planned to put somebody in there that night, all of you?

"A. I didn't say that.

"Q. Well what did you say?

"A. I said we was all planning on it, but I didn't say we all planned it.

"Q. You were all planning on putting somebody in the well that night, all four of you?

"A. I said if we had to."

Coon further said that Eaton was the one that mentioned getting the Oldsmobile, that they could have kept the Ford as far as Coon was concerned, that it was not Edwards' idea to go into these houses, that Edwards did not say that the two houses would be easy to knock over, that the four were together in the Ford when looking over the two houses, that Coon then saw the negro boy fixing the tire on a truck in the road on the 13th of December, that they went to Stone's house first, they stayed there close to two or three hours, that a pistol was gotten from the house, that Eaton took charge of the pistol, that Coon was not in the house when Mrs. Culpepper was hit, that Coon was coming in the back door and had a 20-gauge shotgun, that Eaton had a pistol and Lokos had the 410 or the 22, that Coon did not remember stating to the solicitor that all four had guns and "put them on Mr. Culpepper when he came in," that Coon is not sure about Edwards having a gun, that Coon had his 20-gauge shotgun lying beside him when driving to the well behind the Oldsmobile, that he does not remember hearing the statement made in Mrs. Culpepper's presence that the four were going to put Mr. and Mrs. Culpepper in the well, that Coon is not saying "it didn't take place," that Lokos and Eaton told Coon to follow them to the well, that "They told us to follow them. They didn't say where," that Eaton was leader and had been ever since they started out, that Edwards had not been leader, that Edwards was not the one that started them going into houses, that Coon is not sure who suggested going into Stone's house, that Coon thinks Eaton mentioned it, that Coon did not help to tie either Mr. or Mrs. Culpepper and was not present when they were tied, that Coon helped move Mrs. Culpepper out, that Lokos and Eaton moved Mr. Culpepper, that his hands were tied and he was gagged as far as Coon knew, that Mrs. Culpepper was tied and gagged, that she was carried out in a chair, that he is not sure whether she had lost a lot of blood, that Coon saw some blood, that he did not see anybody beat Mr. Culpepper, that Coon did not hear or see when Culpepper was shot, that Coon helped to put Culpepper in the well, that only two put him in the well, that weight does not "matter much when you work with pig iron," that Coon had worked with pig iron, that Culpepper was dead when put in well so far as Coon knew, that Culpepper was put in head first, that Edwards was sitting in the car and did not get out, that Coon and Eaton moved the top off the well, that Coon and Lokos threw Mr. Culpepper in head first, that Coon and Lokos got Mrs. Culpepper and threw her in head first, that the cover was put back on the well and they "changed the stuff from the Ford into the Oldsmobile and took off," that Eaton drove the Ford over to the side of a cliff, that all four tried to push it over and it wouldn't go, that they left it there, that Coon was in the Oldsmobile when it was set afire, that it was dark, that all four left in the Oldsmobile and went back to Texas where they were apprehended, that Coon saw blood on the back seat of the Olds-

mobile, that Coon never did get to see Mr. Culpepper's face, and that he was bleeding when put in the well.

The first time on the stand as a witness for the state, Smith testified that he went to the well "where the bodies of Mr. and Mrs. Culpepper were alleged to be on the 14th day of December, 1963." The witness testified that he looked "at the scene around there"; that he "took some pictures and made some measurements." He identified a picture he made at the well. He named certain persons who were in the picture as being the "late Sheriff" and a highway patrolman. The witness identified as his own some handwriting on the picture and as showing certain measurements the witness and the sheriff made at the well.

This witness identified another picture he made showing "a close up view of the well itself showing the back end of the late Sheriff Bratton as he was lowering the chain into the well to measure the depth of the well." The witness said the picture "shows blood on approximately six blocks inside the well."

This witness testified that he saw defendant at the Marengo County Jail on the night of December 18, 1963; that the witness had a brief conversation with defendant at that time; that defendant was not threatened or offered a reward or hope thereof to make a statement; that Edwards and Eaton were eating; that "We asked them could we make their picture"; they "were both exceedingly cooperative"; that defendant "grinned, and we posed them and took pictures"; that defendant said that he had a nice meal and was "being treated nice"; that witness asked defendant "why they would kill the Culpeppers, to which he never did respond."

After defendant had put on his evidence, Smith testified on rebuttal, for the state, that on December 18, 1963, he had a conversation with defendant's companion, Coon, in the sheriff's automobile between Cuba and Linden and at the Marengo County Jail in Linden. On being asked:

"Who all was present?"; Smith said: "Then Deputy Sheriff Melvin Stevens and Deputy Sheriff Langford Stevens, Mr. Stanley Dearman, Lokos, Coon and myself."

### First Statement.

The witness was asked:

"Q. I'll ask you whether or not, on that occasion, Coon told you that, when he came up there at the back, that the defendant, Edwards, had Mr. Culpepper covered with a shot gun?"

Defendant objected and the court overruled the objection. Smith testified that Coon made the statement.

### Second Statement.

The solicitor also asked the witness Smith:

"Q. In this same conversation that you have already testified about, did the defendant, Coon, make this statement or words to this effect, that it took all of them to throw Mr. Culpepper in the well, Edwards included?"

The court overruled defendant's objection, on the ground, among others, that "The proper predicate has not been shown in the wording of that question," and the witness testified:

"Q. Did he make that statement or words to that effect?

"A. Words to that effect. He actually said, if you want me to state exactly what he said, I can tell you.

"Q. All right, sir.

"A. He said that Eaton raised the lid on the well, 'and it took the rest of us to throw him in the well.'

"Q. 'Took the rest of us to throw him in the well?'

"A. To throw Mr. Culpepper in the well, yes sir."

The court overruled defendant's motion to exclude.

### Third Statement.

The witness Smith was also asked:

"Q. All right, under the same conditions and at the same time the predicate we've already laid being applicable to this too and being applicable to the other questions that I am going· to ask you, did or not the defendant, Coon, make the statement or words to this effect in your presence and in the presence of others that you've testified were there, without any threats, offer of reward or inducement whatsoever, that, 'The kid,' speaking of Edwards, 'picked out the two houses to be burglarized,' referring to the Stone house and the Culpepper house?"

Defendant's objection was overruled and Smith answered:

"A. Coon made that statement, yes sir."

### Fourth Statement.

Smith was also asked:

"Q. Did he make a further statement under the same circumstances down there at that time, Mr. Smith, without any offer of reward as I have stated, this defendant, Coon, did he make a further statement that before this, earlier in the day, all four of them had agreed to put somebody in that well that night?"

Over defendant's objection, Smith answered:

"A. Yes sir, said they all four went to the well and agreed to put somebody in that well that night."

Smith also testified that, in his opinion, defendant was sane.

On cross-examination, Smith testified that he got into the interrogation of these people of his own volition as a newspaper man; that he took pictures for the newspaper, that he did not take any pictures for the state; that he "would have been delighted to if they'd asked" him; that he had seen "several hundred" insane people; that there are various degrees of insanity; and that he had not read any books "particularly" on the subject of psychiatry; whereupon the record discloses the following:

"Q. Isn't it true that some of the pictures you took that you got paid for some of those pictures?

"A. That's a lie. If you're insinuating

.  .  .

"MR. HARVEY: Now your Honor

.  .  .

"COURT: Wait just one minute, gentlemen.

"SOLICITOR: Your Honor, we think that's an improper question to ask him to begin with.

"MR. HARVEY: Certainly it is not an improper question.

"COURT: Wait a minute. The Court will sustain an objection to it.

"SOLICITOR: We are objecting to it.

"COURT: It is immaterial whether he was paid or was not paid, and gentlemen, the statement is excluded from your consideration. It is not evidence before you.

"MR. HARVEY: Your Honor, I can show bias of this witness.

"COURT: Yes sir, you can show bias, Mr. Harvey.

"MR. HARVEY: Well that certainly would be bias as to whether he received any remuneration for any pictures he took.

"COURT: You may show if he has any interest in it, any personal interest in it.

"Q. You said you would be very willing to help the State if they'd wanted

any pictures, didn't you? Didn't you testify that a minute ago?

"SOLICITOR: We object. He said he didn't take any pictures for the State.

"MR. HARVEY: He testified to that a minute ago.

"COURT: Wait just one minute, gentlemen. You may ask the witness if he has any personal interest in the case, and the witness may state whether or not he has. That would be entirely proper.

"MR. HARVEY: Your Honor, I think this man ought to apologize for calling me a liar too. Now he has no right to sit on that stand and call me a liar.

"COURT: Mr. Harvey, the Court did not understand the witness called you a liar.

"MR. HARVEY: Well I understood it, and I think he ought to apologize to me too.

"COURT: No sir, the witness statement was, in effect, that he had not received any compensation for it. Now let's proceed, gentlemen.

"Q. Did you not state a while ago that you would have been glad to make some pictures for the State?

"SOLICITOR: We object to that question, may it please the Court. He said he made none for the State.

"COURT: The Court sustains the objection."

That concludes the examination of Smith.

The witness Dearman, testified that on December 18, he was in an automobile with "Dick Smith, Melvin Stevens, Langford Stevens, myself, Coon and Lokos"; and that Coon made a statement that ". . . when he first saw Mr. Culpepper, that Edwards had him covered with a shot gun";

that Coon also stated ". . . that Eaton was holding the cover up to the well, 'and it took all the rest of us to take Mr. Culpepper and throw him in the well'"; that Coon also stated that "'The kid,' referring to Edwards, 'picked out the houses,' the Stone House and the Culpepper house, for them to burglarize that night"; and that Coon also stated that "'All four of us had agreed to throw somebody in that well that night.'"

In summary, the testimony of Smith and Dearman is to effect that Coon had stated: (1) that defendant had Culpepper covered with a shotgun; (2) that it took all of them to throw Culpepper in the well, defendant included; (3) that defendant picked out the two houses to be burglarized; and (4) that all four, earlier on the day of the crime, had agreed to put somebody in the well that night.

■ A witness cannot be impeached by proof of contradictory statements made by him, whether oral or in writing, without first asking him whether he made such declarations. Howell v. Reynolds, 12 Ala. 128; Powell v. State, 19 Ala. 577.

"There is possibly no rule governing the production and introduction of evidence in any case better understood or more rigidly enforced, than is the rule which requires that a party, who wishes to impeach the testimony of an opposing witness by showing contradictory statements, shall lay a proper predicate therefor. The rule requires 'that the attention of the witness, who is attempted to be discredited, should be called to the time, place and person involved in the supposed contradiction, in order that the faculties of the mind may be put in motion, and the memory aided by the train of ideas which such circumstances would be likely to suggest with reference to the subject-matter of inquiry. 4 Phil. Ev. 761. The rule, however, is satisfied, when the attention of the witness is called with reasonable certainty to the subject of the previous declarations.'

Nelson v. Iverson, 24 Ala. 9, 60 Am.Dec. 442." Bridges v. State, 225 Ala. 81, 86, 142 So. 56, 60.

■ The rule requires that the witness be asked whether he "made such statements, giving time and place, person to whom the statements were made, persons present, etc.;" and that the questions to the impeaching witness "should be as definite, in describing the time, place, etc., so as to identify the statements as those included in the predicate." McDaniel v. State, 166 Ala. 7, 8, 52 So. 400.

The questions to Coon, on cross-examination, did not, at first, include Smith among those present when Coon was being questioned by the solicitor. Some of the questions include "Mr. Bratton" among those present. The evidence impresses us that the solicitor was present and the statements were made at the jail. That impression must be erroneous, however, because Dearman testified that the four statements were made in the automobile and Dearman does not include the solicitor or Mr. Bratton among those present. We pretermit deciding that the predicate for the first statement was sufficiently definite to satisfy the rule.

As to the second and third statements, however, we have not found in Coon's testimony where he was asked if he had stated that it took all four, defendant included, to throw Culpepper in the well or that defendant picked out the Stone and Culpepper houses as targets for burglary.

■ As to the fourth statement, about the agreement to put somebody in the well, we think Coon admitted making the statement. He testified: "I said we was all planning on it. . . ." Smith testified that Coon "said they all four . . . agreed to put somebody in that well that night."

In laying the predicate, the solicitor asked Coon did he not state that "you all had planned to put somebody in the well that night." The only difference between what Coon admitted saying and what Smith said Coon had said is that the predicate and Coon use the word "plan," and the solicitor and Smith use the word "agree." We think that, as used here, the two words, plan and agree, have substantially the same meaning. If they are not the same, then no sufficiently certain predicate was laid for the fourth statement. If the two words are substantially the same, then Coon admitted making the statement. The Court of Appeals has said:

"It is permissible and proper to attack the credibility of a witness by showing that at a previous time and place he made a statement which was out of accord with the testimony he gave at the instant trial.

"It may be noted that, before this prior contradictory character of evidence is admissible, the witness involved must either deny he made the previous statement or testify that he does not remember making it. Hall v. State, 19 Ala.App. 229, 96 So. 644; Raines v. State, 147 Ala. 691, 40 So. 932; Weaver v. State, 33 Ala.App. 207, 31 So.2d 593; Green v. State, 233 Ala. 349, 171 So. 643; Bigham v. State, 203 Ala. 162, 82 So. 192." Lawson v. State, 36 Ala.App. 438, 440, 57 So.2d 643, 644.

We think it clear that the court erred in permitting Smith and Dearman to testify that Coon had stated that all four had agreed to put somebody in the well.

We pretermit deciding, however, whether we must reverse for the error in admitting the testimony that Coon had made the fourth statement because the judgment must be reversed for error in admitting, without proper predicate, the testimony of Smith and Dearman that Coon had made the second and third statements.

We come now to the questions asking Smith whether he "got paid for some of those pictures," whether he had said that he "would have been glad to make some pic-

tures for the State," and the court's action sustaining objection to the questions.

This court has said:

" . . . In general, any fact which tends to show bias on the part of a witness is proper evidence. A wide latitude is allowed on cross-examination to develop such fact. The extent of such cross-examination, and especially the recalling of the witness for that purpose, is to a degree in the discretion of the trial court. The undue consumption of time in the trial of causes, and the avoidance of multiplied collateral issues tending to becloud the main issue before the jury, are matters necessarily committed in the first instance to the wise discretion of a trial judge. This discretion does not warrant the denial of the right to cross-examine the witness on matters directly affecting his interest or bias in the case." Drummond v. Drummond, 212 Ala. 242, 244, 102 So. 112, 114.

" . . . It is, of course, true that the interest of a witness in the result of the trial, whether his interest be pecuniary or sentimental, may always be placed before the jury, as bearing upon the weight and credibility of his testimony. . . ." McGehee v. The State, 171 Ala. 19, 24, 55 So. 159, 161.

" . . . In weighing testimony, the jury ought to be in possession of all facts calculated to exert any influence upon the witness. . . ." Prince v. The State, 100 Ala. 144, 148, 14 So. 409, 411.

See Ex parte State (Johnson v. State), 199 Ala. 255, 74 So. 366.

We think the jury was entitled to know whether Smith had been paid for taking pictures used in connection with this case and, if he had been paid, who paid him and how much. We find no inference of impropriety in paying a person to make pictures of the scene of a crime, or in such

person afterwards testifying, but, as this court has said with reference to payment by a party of expenses accruing on the attendance of a witness:

" . . . Though the fact of such payment may impute no improper motive to the party, yet it may afford some ground for inferring a bias in the witness' testimony and is therefore admissible in evidence. [Alabama G. S. R. Co. v. Johnston, 128 Ala. 283, 29 So. 771.] " Southern Railway Co. v. Crowder, 130 Ala. 256, 265, 30 So. 592, 595.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.

## ON REHEARING

COLEMAN, Justice.

The state applies for rehearing and insists that we erred in holding that the trial court was in error in admitting, without proper predicate, testimony that defendant's witness, Coon, had made, out of court and outside the presence of defendant, two statements which contradict the testimony given by Coon on defendant's trial.

The state asserts that evidence of the joint participation of defendant and Coon in commission of the crime rendered admissible, in rebuttal of Coon's testimony that defendant was not a willing participant in the crime, the testimony of Smith and Dearman that Coon had made prior inconsistent statements.

The state misconceives the rule. In support of its argument, the state cites Helms v. State, 40 Ala.App. 622, 121 So.2d 104. In *Helms*, the court held that where the evidence showed that defendant and one Sanders forced the witness, at gun point, to give defendant and Sanders the money from a service station cash register, the court did not err in permitting the witness to testify that Sanders took the witness into the hallway and, while defendant was

not shown to have been present, Sanders told the witness to lie down and asked if the witness wanted him, Sanders, to shoot the witness. In support of the holding, the Court of Appeals cited West v. State, 168 Ala. 1, 53 So. 277, where this court said:

"  .   .   . The principle of law to be stated is that, where a conspiracy is established, any act or declaration of a conspirator made or done in furtherance of the common design is admissible in evidence against a co-conspirator, although not made or done in the presence of such co-conspirator.  .   .   ." (168 Ala. at page 4, 53 So. at page 278.)

The Court of Appeals cited also Lockett v. State, 218 Ala. 40, 117 So. 457, where this court said:

"The evidence of joint participation in the common criminal enterprise was evidence of conspiracy between Mays and Lockett rendering admissible against Lockett the doings of Mays in furtherance or in perpetration of the crime. .  .   ." (218 Ala. at page 43, 117 So. at page 458.)

The general rule is correctly stated in *West,* supra. Evidence showing the act or declaration of one conspirator is admissible against the other conspirator when done or made "in furtherance of the common design."

"The general rule is familiar, that where several parties conspire or combine together to commit any unlawful act, each is criminally responsible for the acts of his associates or confederates committed in furtherance or in prosecution of the common design for which they combine." Williams v. State, 81 Ala. 1, 4, 1 So. 179, 182.

The reason for the rule has been stated as follows:

"Acts and declarations of conspirators who are not on trial are sometimes admitted in evidence against a co-conspirator who is being prosecuted. The principle upon which such acts and declarations are admitted in evidence is that by the act of conspiring together the parties doing so have generally assumed as a body the attribute of individuality as relates to the prosecution of the common design or purpose, and that what is done or said by any one in furtherance of that design is a part of the *res gestae,* and therefore the act of all. They are also admissible on the ground of agency. .   .   ." State v. Moeller, 20 N.D. 114, 120, 126 N.W. 568, 571.

In a case where defendants were charged with conspiracy to burn a steamer, the court said:

"The common design is the essence of the charge; and this may be made to appear, when the defendants steadily pursue the same object, whether acting separately or together, by common or different means, all leading to the same unlawful result. And where prima facie evidence has been given of a combination, the acts or confessions of one are evidence against all. This rule of evidence is founded upon principles which apply to agencies and partnerships. And it is reasonable that where a body of men assume the attribute of individuality, whether for commercial business or the commission of a crime, that the association should be bound by the acts of one of its members, in carrying out the design." United States v. Cole, 25 Fed.Cas. p. 493, No. 14,832, 5 McLean, 513.

That rule does not, however, make evidence showing the declaration of one confederate admissible against the other when the declaration was not made until after the purposes of the unlawful combination had been accomplished.

This court has said:

"  .   .   . Confessions of one defendant, made apart from the other, are not evidence against that other. :  .   ." Gore v. State, 58 Ala. 391, 392.

". . . Manifestly the effect and operation of this evidence should have been limited to the defendant who made the statements deposed to, as they were not made in the prosecution of the objects of the conspiracy alleged, but after such conspiracy had been carried out, and the purposes of the unlawful combination had been accomplished, and none of the other alleged conspirators were present when they were made. The court erred in declining to so limit the effect of this evidence." Everage v. State, 113 Ala. 102, 103, 21 So. 404.

"The appellant was indicted and convicted of robbery. On the trial one James Bowling, who had pleaded guilty and was not on trial at the time, was examined as a witness for the state. The evidence of this witness tended to show the guilt of the defendants, and that he was an accomplice in the commission of the offense. Against the objection of the defendants, the solicitor was permitted to prove a conversation between him and the witness, had in the absence of the defendants and without their knowledge. This was purely hearsay evidence, and its admission clearly erroneous and detrimental to defendants." James v. State, 115 Ala. 83, 85, 22 So. 565, 566.

"It is a well-recognized rule that the incriminating acts or statements of one confederate after the ends of the conspiracy have been accomplished, and no longer exist, are not admissible against another in his absence and without his knowledge and consent." Dailey v. State, 233 Ala. 384, 387, 171 So. 729, 731.

". . . The subsequent statements *to the same effect by Teal* (not a part of the res gestae of the crime) uttered without the presence and hearing of defendant were not competent evidence against the other codefendants. . . ." Clark v. State, 240 Ala. 65, 69, 197 So. 23, 27.

In this connection observe Delaney v. State, 204 Ala. 685, 87 So. 183; Morris v. State, 25 Ala.App. 494, 149 So. 359; Douglas v. State, 42 Ala.App. 314, 163 So. 2d 477.

The Court of Appeals has said:

"Therefore the acts and declarations of McArdle long after the consummation of the common purpose, not in the presence or hearing of defendant, and with which defendant, is not shown to have been connected, should not have been admitted in evidence; they not being a part of the res gestae. . . ." Leverett v. State, 18 Ala.App. 578, 581, 93 So. 347, 350.

". . . But statements of such coconspirator made after the termination of the conspiracy are not admissible, unless so clearly related to the commission of the offense as to be a part of the res gestae or unless made in the presence of the defendant and undenied by him, in which latter case they become admissible under the rule of tacit admissions. (Citations Omitted.)" Connelly v. State, 30 Ala.App. 91, 93, 1 So.2d 606, 607; Macon v. State, 30 Ala.App. 276, 279, 4 So.2d 439.

■ In the instant case, the second and third statements attributed to Coon were not made in furtherance of the common design. The statements were made by Coon, when defendant was not present, several days after the crime had been accomplished and after all four of the participants in the crime had been taken into custody. Because Coon did not make the statements until after the completion and termination of the common enterprise, the statements were not admissible against the instant defendant under the rule which allows the statement of one confederate to be shown in evidence against another confederate who was not present when the statement was made.

On original deliverance, we held that the second and third statements made by Coon were not admissible to impeach Coon because the state had not laid a proper

predicate during the examination of Coon. We think our holding is correct under Bridges v. State, supra, and other authorities cited in the original opinion.

Opinion extended.

Application overruled.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.