TYSON, Judge.
The appellant was indicted for the embezzlement of $2,684.62, the personal property of R. D. Easters, by virtue of his employment by Easters. The jury found the appellant guilty as charged and the trial court then entered judgment, setting sentence at three years imprisonment.
R. D. (Doug) Easters testified that he was the owner and operator of Elba Paint and Body Shop during 1973 and 1974 in *617 Elba, Alabama. He stated that he entered into a contract of employment with Paul Craig Arnold, the appellant, which contract commenced on January 2, 1973, and was to run for one year. Under the terms of this contract, the appellant was to be paid a salary of $850.00 per month, and if there were profits after a three-month interval, that there would at that time under the contract, the parties were to divide the profits after paying Mr. Easters’ $500.00 as monthly rental on the property. The contract also provided that the appellant was to receive one-half the net profits from the sale of any parts over and above the terms as stated. Mr. Easters testified that during 1973 the company showed gross receipts of $69,231.00; a cost of operations of $21,-964.00; depreciation of $3,713.00; repairs of $35.00; salaries and wages, excluding anything payable to himself, of $39,251.00; insurance, $718.00; utilities, $968.00; advertising, $720.00; service truck expenses, $981.00; interest $5,919.00; and miscellaneous expenses of $2,693.00; supplies, $361.00; laundry, $225.00; showing a net loss for the year of $9,371.00. Mr. Easters also testified that at no time during the year 1973 did the company make sufficient monies to enable him to be paid his monthly rental as set out in the contract. Mr. Easters testified that commencing with January, 1974, the parties did not enter into a new agreement, but that he simply continued to pay Mr. Arnold his monthly salary of $850.00, and that all payrolls were under Mr. Arnold’s supervision, and that Mr. Arnold prepared the checks for the company and made most of the deposits for the company. Mr. Easters then identified a number of records of the company which indicated from the period February, 1974, until the first part of July, 1974, that a number of items were shown wherein on work orders the appellant would indicate that the proceeds had been received on a company work order, and the statement would be marked, “paid,” but then an examination of the company’s bank deposits for the corresponding period failed to reveal the deposit for the item marked “paid” on the work sheets. Also during this same period there were several instances in which the checks were issued on the company, payable to the paint and body shop, such as payments to the power company, in one instance to a veterinarian, in other instances to grocery stores, which indicated that these were checks for personal items of expense of the appellant and were not for the benefit of the company. Mr. Easters further testified that he was a candidate for public office during part of this time, and that during the spring of 1974 had turned over all the company’s books and records to Mr. Arnold for handling. He stated that in June he began to examine the company records and after noticing the discrepancies with reference to work orders and which failed to show deposits and checks issued for payment of bills for the benefit of Mr. Arnold which appeared to be personal expenses for Mr. Arnold, he notified his attorney, Mr. Kenneth Fuller, and his accountant and had them examine these same records. Mr. Arnold was called in and had a conversation in the office with Mr. Fuller, the attorney, and Mr. Easters, wherein these matters were called to his attention. At this time Mr. Fuller indicated to Mr. Arnold that there were some $4500 or $4600 discrepancy, and that Mr. Easters was owed this much by Mr. Arnold, the appellant.
Mr. Kenneth T. Fuller, an attorney of Enterprise, Alabama, testified that he had been asked by Mr. Doug Easters to examine his company’s records and that he did so. He further stated that at Mr. Easters’ request he made arrangements to meet with the appellant, Mr. Arnold, and Mr. Easters early one Monday morning in July, 1974, at the company office.
He stated that Mr. Arnold came into the office and that he talked with him alone and pointed out to him that through examination of the work orders for which were marked in his handwriting, “paid,” and which showed no bank deposit, and the several checks which had been written by him on company funds for his personal expenses, that it appeared that some $4400.00 to $4500.00 was owed to Mr. Easters by Mr. Arnold. He stated that Mr. Arnold told *618 him he wanted to talk with Mr. Easters about it and wanted to see if it was something that could be worked out. Mr. Fuller stated that he advised Mr. Arnold that his services were terminated and that this was the end of his employment for the Elba Paint and Body Shop. He stated that Mr. Arnold then asked if he could speak with Mr. Easters, and he told him that he could. He stated in a few minutes that the two men came into the room together and that he told Mr. Easters that it would probably be all right for Mr. Arnold to use the pickup truck to go to his home. He stated that Mr. Arnold then left and that subsequently he had some conversations with members of Mr. Arnold’s family and possibly his attorney.
The appellant, Paul Craig Arnold, testified that during 1973 and 1974 he was employed as manager of the Elba Paint and Body Shop in Elba, Alabama. He stated that Mr. Easters was to pay him a monthly salary of $850.00 per month for the first three months, and thereafter they would share fifty per cent of the net profits. He stated that he never received any funds as net profits on the parts, but continued during the year 1973 to receive a salary of $850.00 per month. He stated that at Christmas time he got a bonus. He stated that in 1974 he was handling the company’s records and that on several instances he wrote checks to different companies wherein he would go and pick up various items for the company, such as at a Junior Food Store he would have to pay cash in order to obtain the items, such as cleaning materials and towels for the body shop. He also testified that on several instances he wrote checks which were cashed, and that he paid cash on receipt of certain items which had been ordered in behalf of the company, such as supplies of different types. He testified that he was in charge of the payroll and the checkbook, and he did recall having a conversation with Mr. Easters and Mr. Fuller in early July on a Monday morning at the company office. He stated that he told Mr. Fuller he did not believe that he owed the company $4500.00 or $4600.00, and that he wanted to see if he could work something out, and he asked permission to go talk with his family, and he said that Mr. Easters and Mr. Fuller told him he could take the pickup truck and go talk with his family. He testified that he was indebted to the Elba Exchange Bank for $2000.00 for monies which he had previously borrowed.
On cross-examination the appellant admitted writing two checks to the Alabama Power Company that were personal and also two to the IGA Grocery Store, and in one instance to a veterinarian. However, he stated that it was his understanding that he would be able to be repaid for monies due him for his salary and that these were in the nature of an advance.
The appellant presented the testimony of his wife, Mrs. Paul Arnold, and she endeavored to testify that during early 1974 on a Saturday afternoon, she was present at the company office with Mr. Arnold, her husband, Mr. Easters, and another employee by the name of Charles Cooper. The appellant sought through his wife to present testimony in the nature of a conversation which would have impeached the testimony of Mr. Easters, the essence of this being by Mr. Easters to the appellant, “If you need anymore extra money, just write yourself some checks and then we will settle up at the end of the year.”
The State objected to the introduction of this testimony and the trial court sustained this objection, indicating that the appellant had failed to lay a predicate to impeach the testimony of Mr. Easters.
I
The sole issue presented by this appeal is whether or not the trial court erred in sustaining the State’s objection to the appellant’s tender of his wife’s testimony with reference to the conversation in early January, 1974 at the company office between Mr. Easters, her husband, Mr. Arnold, and at that time she was present, and a fellow employee by the name of George Cooper [R. pp. 96-98].
The basis of the trial court’s sustaining the State’s objection was that the appellant *619 had failed to lay a proper predicate in order to impeach Mr. Easters.
On cross-examination, Mr. Easters, in response to questioning by the appellant’s attorney, stated the following [R. p. 73]:
“Q. Mr. Easters, do you recall in the early part of January, 1974, having a conversation with the defendant, Mr. Arnold here, on a Saturday afternoon with his wife and a fellow employee named George Cooper, with reference to his salary payments?
“A. No, sir. I don’t, Mr. Stokes. It could very well have happened, but I don’t recall it.
“Q. George Cooper was an employee of yours, was he not?
“A. Yes, sir.”
The rule covering the laying of a proper predicate prior to the introduction of impeachment testimony is well set forth in the opinion of the Supreme Court of Alabama in Bridges v. State, 225 Ala. 81, 142 So. 56:
“There is possibly no rule governing the production and introduction of evidence in any case better understood or more rigidly enforced, than is the rule which requires that a party, who wishes to impeach the testimony of an opposing witness by showing contradictory statements, shall lay a proper predicate therefor. The rule requires ‘that the attention of the witness, who is attempted to be discredited, should be called to the time, place and person involved in the supposed contradiction, in order that the faculties of the mind may be put in motion, and the memory aided by the train of ideas which such circumstances would be likely to suggest with reference to the subject-matter of inquiry. 4 Phil.Ev. 761. The rule, however, is satisfied, when the attention of the witness is called with reasonable certainty to the subject of the previous declarations.’ Nelson v. Iverson, 24 Ala. 9, 60 Am.Dec. 442.
“In the case of Walker v. State, 220 Ala. 544, 126 So. 848, 853, it is said: ‘We observe, however, that the rule of the cases is that where a witness is sought to be impeached by a contradictory statement, the attention of the witness sought to be impeached should be directed “with reasonable certainty to the time, place and person involved and the supposed contradiction.” Nelson v. Iverson, 24 Ala. 9, 60 Am.Dec. 442; Southern Ry. Co. v. Williams, 113 Ala. 620, 21 So. 328. If the predicate is as to an exact specific contradictory statement, and does not embrace one “of like import” or “in substance,” it is error to allow such question. * * * Murph v. State, 153 Ala. 67, 45 So. 208; McClellan v. Lyle-Taylor Grain Co., 205 Ala. 59, 87 So. 596. The reason for this is, if the question put to the impeaching witness had been put to the witness to be impeached, it might have provoked a different answer, or a reasonable explanation.’ ”
As may be seen in examining the testimony of Mr. Easters, while it is true that the appellant notes the time of the alleged conversation and the parties who were presumably present, that is, in addition to himself and his wife, the fellow employee George Cooper, but the nature of the question is “with reference to his salary payments.” At no point does this conversation relate to the need of any extra money or the authority to write some additional checks or that there will be a settlement with reference this arrangement at the end of the year. Bridges, supra, points out the absolute requirement that the testimony sought to be impeached shall be set forth with reasonable certainty in order that the witness may be called upon to give his version or to give an appropriate explanation or answer.
Since it is clear that there was no proper predicate laid, the ruling of the trial court is correct. Murph v. State, 153 Ala. 67, 45 So. 208; Edwards v. State, 279 Ala. 371, 185 So.2d 393; McClellan v. Lyle-Taylor Grain Co., 205 Ala. 59, 87 So. 596.
We have carefully examined this record as required by law, and find no error therein. The judgment of the trial court is due to be and the same is hereby
AFFIRMED.
*620 HARRIS, DeCARLO and BOOKOUT, JJ., and SIMMONS, Supernumerary Circuit Judge, concur.
CATES, P. J., not sitting.