344 So.2d 807 (1977)
Ervin EDWARDS
v.
STATE.
3 Div. 599.
Court of Criminal Appeals of Alabama.
March 1, 1977.
Rehearing Denied March 29, 1977.
David B. Byrne, Jr., Montgomery, for appellant.
William J. Baxley, Atty. Gen. and Eric A. Bowen, Asst. Atty. Gen., for the State.
MOORE, Retired Circuit Judge.
The indictment in this case contained two counts. Count 1 charged the appellant with burglary in the second degree and Count 2 charged him with grand larceny. The verdict of the jury is as follows:
"We the jury find the defendant guilty as charged."
The trial Court accordingly adjudged, "that the said defendant is guilty as charged in the indictment". The trial court also sentenced the defendant to imprisonment in the penitentiary of the State of Alabama for a term of four years. The appellant's motion for a new trial being denied, the appellant brings this appeal.
*808 On the trial of this case C. J. Evans, a policeman of Montgomery, Alabama, testified, in substance, that he was on duty on February 4, 1976, and while patrolling on Federal Drive at about 4:00 o'clock A.M. he came to the Jamboree Club; that he saw a 1972 blue LTD there; that he got out of his car to check the building and found a hole in the back of the building; that the hole was about 14 by 21 inches in size; that he found some bottle miniatures of whiskey on the ground about the hole; that he called for back up officers and they came; that Detective Herbert Norton was one of the officers that came to the club; Norton came about fifteen minutes after the witness got to the club; that in about fifteen minutes after the other officers arrived at the club, we found Larry Powe in some woods at the east side of the building about 50 yards from the building; that they arrested Powe; that about 6:30 o'clock that morning, he saw the appellant at Lower Wetumpka Road and Broadway Street, which was about seven or eight miles from the Jamboree Club; that the detective came up and took appellant to headquarters; that appellant had on a blue leather jacket and beige pants and a green flowered shirt; that prior to the time he saw the appellant at the place above mentioned, he had a description of the clothing he would wear; that he had been told that; that the description of appellant's clothing as told to him was a blue leather jacket, beige pants and flowered printed shirt.
On cross-examination, this witness testified he was told the description of appellant's clothing from the other subject (the only other subject was Larry Powe); that the other subject did not give him appellant's name; that the car he saw parked at the Jamboree Club building had a Michigan license plates on it and Larry Powe is from Michigan; that he found a pick behind the car; that the club was painted green; that it was muddy behind the club where the hole in the building was; that the appellant's shoes were muddy when he saw him at Lower Wetumpka Road and Broadway; that appellant did not have on his person any miniatures at the time of his arrest.
Charles Brown testified, in substance, that he was president of Jamboree Club, a corporation, located at 2015 Federal Drive in Montgomery; that he had owned the club since January 11, 1976; that on the morning of February 4, 1976, at about 5:30 o'clock, he arrived at the club; that the police were there and he saw a hole in the back wall; that the wall was concrete blocks on the outside with paneling on the inside; that he unlocked the front door and went inside with the officers; that 984 miniatures of whiskey were missing of a value of $480.00; that some miniatures were on the ground near the hole in the wall and we found a case in the back seat of the car parked there; there were four or five cases in the car trunk; that the jukebox and cigarette machine in the building had been broken into and the money in them taken out; that we found a cloth bag with change in it; that it was the same type bag his jukebox had; that his place of business was in Montgomery County; that they recovered about all of the whiskey taken from the car and on the ground at the hole in the wall.
Detective H. C. Norton testified, in substance, that on February 4, 1976, he investigated the burglary at the Jamboree Club; that they got Larry Powe out of the woods near the club and talked to him and a description of a second subject that was described to us was put out; that the description of the second subject was a black male, about 35 years of age, wearing a black leather-looking jacket and some brownish-beige looking pants; that he later saw appellant at police station and removed his clothing, which we wrapped and took to the toxicologist's office; that as appellant disrobed, he was standing on some paper and little pieces of what we call rock cement was all through his clothes and fell on the paper; these pieces and the clothes were wrapped up and sent to the toxicologist's office; that there were particles at the hole in the rear of the building, rocks, dust and paint we took and wrapped individually and sent to the toxicologist's office; that he did not find any of appellant's *809 fingerprints at the scene of the burglary on anything there.
On cross-examination, this witness testified that the motor on the car parked at the club was not running when he got to the club; that officer Evans or somebody had turned it off; that we found the crowbar in the car and the pick was at the rear of the car.
Richard A. Roper, a toxicologist employed by State Department of Toxicology and Criminal Investigation, Montgomery Laboratory, testified, in substance, that he received some evidence in the case; that the items received by him were a pick, one pair of black leather gloves, a pair of work gloves, a pry bar, samples of cement blocks from Jamboree Club, clothing, including shoes; that he found some plaster-like material on the shaft of the pry bar; that he found some orange-colored powdery paint-like material on the handle and end of the handle of the pick; that he examined that material and compared it with the material that came from the club and found them similar in color and texture, and that they displayed similar properties in solvents, and they had the same chemical elements; that he found no inconsistency in any respect; that he examined the clothing; that he compared the small pieces of concrete block in the bag with the clothing which had some paint on the surfaces; that he compared the paint found on those pieces of concrete blocks with the paint on the material that came from the Jamboree Club and said materials were similar in color and texture, displayed similar properties when placed in various solvents, and contained the same composition of chemical elements; that the same was true of the pieces of concrete found with clothing compared with the concrete block material from the Jamboree Club; that he examined these materials with a microscope and they had the same visual properties; that these materials could have had a common source of origin but he could not say unequivocally they did have a common source of origin; and that he found no inconsistencies.
This witness further testified that fingerprints would not show through gloves with the texture of the two pairs of gloves he received. (State's Exhibits 1 and 2)
Detective Herbert Norton was recalled and testified State's Exhibit 2 were gloves worn by Larry Powe when he was arrested at the club; and State's Exhibit 1, a pair of gloves, was found in the car parked at the club; that State's Exhibit 4 was a sack containing particles removed from the rear wall of the Jamboree Club; that State's Exhibit 5 was clothing worn by the appellant at the time of his arrest, which he took off at police headquarters while standing on paper; that the particles of concrete fell off onto the paper while he was disrobing and that State's Exhibit 6 was a pick found at the rear of the car parked at the club.
These items in said exhibits were submitted to the toxicologist. Said exhibits were admitted in evidence.
Officer C. J. Evans testified also, in substance, that Larry Powe did not give the officers any name of his accomplice, but he did describe him and the clothing he was wearing.
When the State rested, the appellant filed a written motion for a judgment of acquittal on the ground the State had not proved sufficient facts to constitute a prima facie case, which was denied by the court below.
Larry Powe, a witness for the appellant, testified, in substance, that he lived in Detroit, Michigan; that on February 4, 1976, he broke into the Jamboree Club; that he and a friend came up from Mobile and rode around awhile and was out of gas trying to get back to Detroit and stopped at a building; that it was open at the time and we drove around for awhile and went back and it was closed; that they parked the car and went and broke into the back of it by knocking out a piece of concrete wall; that he told the police that the appellant was not with me when the club was broken into; that it was his car that was parked at the club when it was broken into; that he told the police "Robert" was the persons's name that was with him when the club was broken *810 into; and that appellant did not commit the crime with him. On cross-examination this witness testified that Robert Harris lived in Detroit and helped him break into the club and they got some money and miniatures of whiskey.
None of the police were called to deny any of Powe's testimony.
During the testimony of C. J. Evans he was asked by the Assistant District Attorney this question:
"Prior to the time you saw Ervin Edwards, did you have a description of the clothing he would wear?"
The appellant objected to that question and his objection was overruled. The witness answered:
"Yes, sir, I was told". On cross-examination that witness stated he learned that from the other subject. The evidence shows the other subject was Larry Powe. The officers appeared on the scene while the crime was in progress and captured Larry Powe when he came out of the woods and had him under arrest at the time he gave them the description of the clothing his accomplice was wearing. The accomplice was not present, having fled the scene. After the court overruled the objection to the above quoted question, the witness was asked to give the description and answered blue leather jacket, beige pants, and flowered printed shirt.
In Edwards v. State, 279 Ala. 371, 185 So.2d 393, as to the admissibility of such evidence stated:
"`It is a well-recognized rule that the incriminating acts or statements of one confederate after the ends of the conspiracy have been accomplished, and no longer exist, are not admissible against another in his absence, and without his knowledge and consent.' Dailey v. State, 233 Ala. 384, 387, 171 So. 729, 731."
When the description of the accomplice of the said Larry Powe was given by him to the policeman C. J. Evans, the said Powe was under arrest and the police were in complete control of the premises and no further acts of burglary or larceny could have been performed by any party that had been engaged in the crime. It was all over so far as the crime itself was concerned. Any other acts of either of said parties would not be in furtherance of the crime. It could not be said that this evidence was a part of the res gestae. A period of time had elapsed since the last act in furtherance of the crime had been performed. It is not shown to be within the scope of any conspiracy. It was not an effort to suppress or conceal evidence and for that reason would not constitute an exception to the rule stated in Edwards, supra.
The trial court is in error in admitting said testimony.
The Assistant District Attorney, in his examination of the witness H. C. Norton, brought out the fact that after the arrest of the appellant, the said Norton gave to the appellant a full and complete Miranda warning and that the appellant said he understood it and stated he wished not to make any statement and refused to sign the rights form. At that point appellant objected and moved to strike the testimony and said objection and motion was overruled. The appellant did not make a statement to the said witness. A defendant in such a situation does not have to deny or affirm his guilt. The only purpose such evidence could have is to prejudice the defendant in the minds of the jury. The ruling of the trial court in this respect is error. This evidence is only admissible when a defendant makes a statement.
After the final judgment of conviction and sentence, the appellant filed a motion for a new trial and among the grounds assigned for said motion were the following: (1) That the verdict was contrary to the facts and the law of the case; (2) that the verdict of the jury is contrary to the facts of the case; and (3) that the verdict of the jury is contrary to the law in the case.
We come now to a consideration of the question of whether said motion for a new trial, which was denied and overruled, should have been granted.
*811 The evidence in this case, to a great extent, must be classified as circumstantial. It is for that reason that we have set out the evidence, or the substance thereof, in considerable detail in this opinion. However, we have not stated every detail of the evidence.
In Willingham v. State, 28 Ala.App. 261, 183 So. 887, the court stated:
"The case therefore presented, is one entirely of circumstantial evidence, and while a conviction may rest on circumstantial evidence, if sufficiently strong and cogent, such conviction should be carefully scrutinized by the judiciary."
A well-connected train of circumstances may be as cogent of the existence of a fact as any array of direct evidence. Perez v. State, 34 Ala.App. 406, 40 So.2d 344; Desilvey v. State, 245 Ala. 163, 16 So.2d 183.
The measure of proof required in a case where conviction is sought on circumstantial evidence is stated in this manner in Pruett et al. v. State, 33 Ala.App. 491, 35 So.2d 115:
"It is evident that a conviction depended in the main on circumstantial evidence. It is apparent, also, that the doctrines of conspiracy and `aid and abet' have places in the review.
"It is a familiar rule that `a person charged with a felony should not be convicted unless evidence excludes to a moral certainty every reasonable hypothesis but that of his guilt, and that, no matter how strong the circumstances were, they did not come up to full measure of proof which the law required if they could be reasonably reconciled with theory that defendant was innocent.' It follows that if the evidence does exclude to a moral certainty every reasonable hypothesis, etc., a conviction is authorized on circumstantial evidence." (Citations omitted)
The law is clearly stated in Davis v. State, 33 Ala.App. 299, 34 So.2d 15, cert. denied 250 Ala. 240, 34 So.2d 17, that:
"A new trial, on the grounds that the verdict is contrary to the evidence, will not be granted where it affirmatively appears that the questions involved are for the determination of the jury, unless it is clearly apparent that the verdict is palpably wrong or unjust." (Citations omitted)
If circumstantial evidence fairly permits an inference consistent with innocence, it will not support a conviction. Tanner v. State, 291 Ala. 70, 277 So.2d 885.
In the case before us, laying aside the identifying description of the accomplice of Larry Powe given by said Powe to the police since we have ruled it inadmissible, there remained before the jury the following circumstance: The police soon after the burglary and arrest of Powe found the appellant on the streets of Montgomery dressed in the manner they described; that they had appellant to disrobe while standing on a paper and pieces of concrete blocks fell from his clothing that were examined by the toxicologist, and his findings that they were consistent in composition and reaction and visual appearance with samples taken from the building burglarized, but which the toxicologist could not say that the two had a common source of origin. Those were the circumstances offered by the State.
In considering the motion for a new trial, we must also consider the testimony of Powe that he told the police that Robert Harris was his accomplice in the offense which was competent evidence in laying a predicate to impeach the witness, but which was not denied by the police. That witness also testified that appellant was not a participant in the offense. The evidence fairly permits any number of inferences consistent with appellant's innocence.
Upon a consideration of the evidence in this case, we are of the opinion and so adjudge that the verdict of the jury is so contrary to the evidence that it is palpably unjust and that the motion for a new trial should have been granted by the trial Court and that the same be and is granted by this court.
For the errors noted, it is ordered and adjudged by this court that this cause be, *812 and is hereby, reversed and remanded to the trial Court for proceedings consistent with this opinion and order.
The foregoing opinion was prepared by the Honorable L. S. Moore, a retired Circuit Judge, serving as a Judge of this Court, under the provisions of § 6.10 of the new Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
TYSON, P. J., and HARRIS, BOOKOUT and BOWEN, JJ., concur.
DeCARLO dissents.
DeCARLO, Judge, dissenting.
The facts in this case parallel those in Creel v. State, 53 Ala.App. 504, 301 So.2d 267, and on its authority I would affirm.