# STATE OF NORTH DAKOTA v. THOR MOELLER.

## (126 N. W. 568.)

**Criminal Law — Evidence — Declarations of Co-Conspirator.**

1. The principle upon which declarations of a co-conspirator not on trial are sometimes admissible in evidence against the conspirator who is on trial is that by the act of conspiring together the parties doing so have assumed as a body the attribute of individuality as relates to the prosecution of the common design or purpose; hence what is done or said by any one in furtherance of that design is the act of all. Evidence of such statements is also admissible on the ground of agency.

**Criminal Law — Evidence — Declarations of Co-Conspirator.**

2. In the trial of a physician on the charge of unintentionally causing the death of a patient by inflicting upon her a mortal wound while attempting to induce and procure a miscarriage, testimony of one P. was admitted relating to certain statements made to him by one D., a third party, who it was claimed had entered into a conspiracy with the defendant to commit the offense. Such statements, regardless of whether a conspiracy had been proved or not, were incompetent, for the reason that they were not made in the presence of the defendant, related to acts previously done or to be done in the future, and were not made in furtherance or in prosecution of the common purpose.

**Criminal Law — Acts and Declarations of Conspirators — Instructions.**

3. An instruction to the jury relating to the testimony of the witness P., charging that if they found a conspiracy between the person D. and the defendant existed, statements made or acts done by D. while either he or the defendant contemplated the formation of such a conspiracy afterwards carried into execution, or attempted to be carried into execution, by such conspirators, or which were so made or done while either or both of them were carrying or attempting to carry into execution the plan and procure such unlawful miscarriage as the result of such conspiracy, might be considered, is erroneous in that it omits the necessary element that such acts must have been done or statements made in furtherance and prosecution of the object of the conspiracy.

---

Note.—In a note on the general question of how near the main transaction declarations must be made in order to constitute a part of the *res gestæ*, in 19 L.R.A. 733, it is stated (page 745), in regard to the admissibility of declarations of co-conspirators, that the law governing the admissibility of such declarations depends rather upon their relation to the common object than to the actual time when made. Thus, STATE v. MOELLER is in accord with the general rule in excluding evidence of declarations not made in furtherance or in prosecution of the common purpose.

**Criminal Law — Appeal and Error — Objections — Cumulative Evidence.**

4. Sustaining objections to questions which, if answered favorably to the party inquiring, would furnish only cumulative evidence on a subject relating to which no conflict in evidence arises, is not necessarily reversible error.

**Evidence — Cross-Examination — Redirect Examination — Conversation.**

5. When a defendant, on cross-examination, has drawn from a witness parts of a conversation with a third party relating to a given subject, the plaintiff may properly require the witness to testify as to the remaining portions of the conversation on the same subject.

**Criminal Law — Appeal — Admission of Incompetent Evidence — Cure of Error by Failure to Move to Strike.**

6. Over defendant's objection, statements made by the witness P., not in the presence of the defendant, and not in furtherance or prosecution of the offense charged, but merely reciting acts that had been done or were in contemplation, were received in evidence. The contention by the state that this did not constitute error because the nature of the questions was such that they did not disclose to the court whether the answers would be competent or incompetent, and that defendant should have moved to strike out the answer, is met by the fact that after some of the questions referred to had been propounded, it must have been apparent to the court that they related to incompetent declarations.

**Criminal Law — Harmless Error.**

7. Certain other questions considered and passed upon.

Opinion filed May 6, 1910.

Appeal from District Court, Ward county; *Goss, J.*

Thor Moeller was convicted of murder, and appeals from the judgment and an order denying a new trial.

Reversed, and new trial granted.

*L. J. Palda, C. D. Aaker,* and *Engerud, Holt, & Frame,* for appellant.

Statements, acts in themselves or accompanying other acts, and part of the *res gestæ,* brought home to one conspirator, are evidence against the other if it appears that they were used in furtherance of a common design. 1 Greenl. Ev. §§ 110, 111; 3 Greenl. Ev. § 94; Wharton, Crim. Law, 4th ed. §§ 704, 705; 2 Rice, Ev. chap. 30, p. 807 & § 336; 3 Enc. Ev. p. 429, and note 74; 12 Cyc. Law & Proc. p. 438; People v. Davis, 56 N. Y. 95; Spies v. People, 122 Ill. 1, 3 Am. St. Rep. 320, 12 N. E. 865, 17 N. E. 898, 6 Am. Crim. Rep. 570; Samples v. People, 121 Ill. 547, 13 N. E. 536; State v. McGee, 81 Iowa, 17, 46 N. W. 764; State v. Walker, 124 Iowa, 414, 100 N. W. 354; Redding v. Wright, 49

Minn. 322, 51 N. W. 1056; Nicolay v. Mallery, 62 Minn. 119, 64 N. W. 108; State v. DeWolfe, 29 Mont. 415, 74 Pac. 1084; People v. Mc-Garry, 136 Mich. 316, 99 N. W. 147; State v. Ryan, 47 Or. 338, 1 L.R.A.(N.S.) 862, 82 Pac. 703; People v. Stanley, 47 Cal. 113, 17 Am. Rep. 401.

Witness may be asked as to knowledge gained from text-books; to test such knowledge and to lay the foundation for impeachment, books themselves may be introduced.  Clark v. Com. 111 Ky. 443, 63 S. W. 740; Hess v. Lowrey, 122 Ind. 225, 7 L.R.A. 90, 17 Am. St. Rep. 355, 23 N. E. 156; Pinney v. Cahill, 48 Mich. 584, 12 N. W. 862; Hutchinson v. State, 19 Neb. 262, 27 N. W. 113; Connecticut Mut. L. Ins. Co. v. Ellis, 89 Ill. 516; Ripon v. Bittel, 30 Wis. 614; Fisher v. Southern P. R. Co. 89 Cal. 399, 26 Pac. 894; State v. Wood, 53 N. H. 484; Clukey v. Seattle Electric Co. 27 Wash. 70, 67 Pac. 379; New Jersey Zinc & I. Co. v. Lehigh Zinc & I. Co. 59 N. J. L. 189, 35 Atl. 915.

*Andrew Miller,* Attorney General, *Dudley L. Nash,* State's Attorney, and *George L. Ryerson,* Assistant State's Attorney (*E. R. Sinkler,* of counsel), for the State.

Where there is no motion to strike out admissions and declarations, objection to their competency is waived.  People v. Wong Chuey, 117 Cal. 624, 49 Pac. 833; People v. Colvin, 118 Cal. 349, 50 Pac. 539; People v. Machado (Cal.) 63 Pac. 66; People v. Lawrence, 143 Cal. 148, 68 L.R.A. 193, 76 Pac. 893; State v. Smith, 124 Iowa, 334, 100 N. W. 40; Blum v. State, 94 Md. 375, 56 L.R.A. 322, 51 Atl. 26; State v. Rogers, 31 Mont. 1, 77 Pac. 293; State v. Coleman, 17 S. D. 594, 98 N. W. 175; State v. Rohn, 140 Iowa, 640, 119 N. W. 88; People v. Smith, 151 Cal. 619, 91 Pac. 511; Duncan v. State, 171 Ind. 444, 86 N. E. 641; People v. Pope, 108 Mich. 361, 66 N. W. 213.

The mode of raising objection to improper answer is by motion to strike out, or a request for instruction that the answer be disregarded. 8 Enc. Pl. & Pr. p. 246; Reiley v. Haynes, 38 Kan. 259, 5 Am. St. Rep. 737, 16 Pac. 440; Holmes v. Roper, 141 N. Y. 64, 36 N. E. 180; Cowan v. Third Ave. R. Co. 31 N. Y. S. R. 145, 9 N. Y. Supp. 610; People v. Wilkinson, 38 N. Y. S. R. 994, 14 N. Y. Supp. 827; Baumier v. Antiau, 79 Mich. 509, 44 N. W. 939; People v. Coffman, 59 Mich.

1, 26 N. W. 207; Tebo v. Augusta, 90 Wis. 405, 63 N. W. 1045; Urbanek v. Chicago, M. & St. P. R. Co. 47 Wis. 59, 1 N. W. 464; Bigelow v. Sickles, 80 Wis. 98, 27 Am. St. Rep. 25, 49 N. W. 106; 8 Current Law, 248; State v. Botha, 27 Utah, 289, 75 Pac. 731; State v. Smith, supra.

A physician may testify as to a female's pregnancy, and give reasons for his belief, after examining the body. State v. Smith, 32 Me. 369, 54 Am. Dec. 578; Ayres v. Delaware, L. & W. R. Co. 158 N. Y. 254, 53 N. E. 22.

Defendant may show necessity for operation. Hatchard v. State, 79 Wis. 357, 48 N. W. 380; State v. Lee, 69 Conn. 186, 37 Atl. 75; State v. Schuerman, 70 Mo. App. 518.

SPALDING, J. The defendant was tried on an information charging him with having, at the city of Minot in Ward county, North Dakota, on or about the 4th day of October, 1908, caused the death of one Gina Lien by, while not having any design to effect her death, inflicting upon her a mortal wound while attempting to induce and procure a miscarriage, the same not being necessary to preserve the life of the female, and of which she died on the 7th day of October, 1908, at said city of Minot. He was convicted and sentenced to serve ten years in the penitentiary. From the judgment of conviction and order denying a new trial, an appeal comes to this court.

The record is very voluminous, and is composed largely of testimony of a number of physicians, including those who performed an autopsy, regarding the cause of the death as indicated by the condition of the body and organs. These witnesses exhibit a high degree of expert knowledge of the subject, and their testimony is far less conflicting than is usual when experts testify on behalf of both parties to an action of this importance. The young lady was about twenty-nine years of age. Her home was in the northeastern part of the state. She was about four months advanced in pregnancy. Dr. Engstad, of Grand Forks, testified that she called on him at his office, he thought, on the 1st day of October, 1908, and requested him to make an examination of her; that she said she thought she had heart trouble, but that on examination he found her heart perfectly normal and her lungs sound; that she then told him she had abdominal pains. When he examined for appendicitis

he discovered a large, aggravated uterus. Whereupon she acknowledged to him that she had been indiscreet, and requested him to perform an operation upon her, which he declined to do. He also testified that he made no examination after he discovered signs of pregnancy. His examination was only external. She left Grand Forks and arrived in Minot about 2 o'clock A. M. Sunday the 4th day of October, 1908, and took a room at the Leland Hotel, where she had a miscarriage, and died about 6 o'clock Tuesday morning, October 6, 1908, from septicæmia caused by injury to the uterus. The defendant visited her in her room in the hotel at different times between Sunday and early Tuesday morning. The claim of the state is that the injury to and the diseased condition of the uterus was caused by the defendant while engaged in producing a criminal abortion. The defendant's contention was that the diseased condition had been caused by an injury inflicted before he was called; that the fetus had died, and septicæmia had set in as a result of such previously inflicted injury, and that the treatment which he applied was proper and necessary under the conditions found by him. Barring the statements of the defendant to the coroner's jury, which were in accordance with his contention, the determination of the issue depended, with one very important exception, upon circumstantial evidence and the opinions of medical experts. The exception referred to was the testimony of one Paulsrud, who was permitted, over defendant's objections, to testify to acts and statements of one Dale, which were by the trial court held to be admissible against the defendant upon the theory that Dale and the defendant were co-conspirators in the procuring of the alleged abortion.

The result of this appeal depends largely upon the correctness of the ruling of the trial court admitting this evidence and his charge on the same subject to the jury. It will simplify matters to first consider this phase of the court's charge. The charge of the court on this subject was as follows: "In this case there has been received in evidence testimony relative to certain alleged statements of one L. W. Dale. I charge you that before you should consider any evidence relative to such statements, or such statements, you should be satisfied beyond a reasonable doubt from the testimony in the case other than such statements themselves that a conspiracy is proven to your satisfaction beyond a reasonable doubt to have existed between the defendant, Moeller, and L.

W. Dale, to procure the unlawful miscarriage of a pregnant woman, Gina Lien, and that after so finding such conspiracy for such purpose to have existed, you further find to your satisfaction beyond a reasonable doubt that such statements admitted in evidence were made while such conspiracy or plan to do such acts was in contemplation of the parties, or was being carried into effect, and after the inception of such conspiracy and before the final completion thereof, I charge you, however, that if such conspiracy between Dale and the defendant, Moeller, existed, and you so find, pursuant thereto in execution of the same the defendant unlawfully performed the acts to produce the miscarriage of Gina Lien, as charged in the information, then the jury may consider as testimony any statements made or acts done by either of such conspirators, provided such statements or acts were made by either, while either contemplated the formation of such conspiracy, afterwards carried into execution, or attempted to be carried into execution, by such conspirators, or were so made or done while either or both of them were carrying, or attempting to carry, into execution the plan to procure such unlawful miscarriage, as the result of such conspiracy, if such conspiracy existed."

In explanation of this charge, brief reference to the testimony to which it refers is necessary. It is shown that Dale had a slight acquaintance with the witness Paulsrud; that they met at the Leland Hotel in Minot, where both were stopping, on Saturday, the 3d of October, 1908, and conversed together on that day and on Sunday, the 4th and Monday the 5th, and that in their conversations Dale confided to Paulsrud the fact that he was looking after a girl who was at the hotel and who was in trouble, and that he had employed Dr. Moeller to relieve her, how much he was to pay him, when it was to be done, and her condition afterward. None of these conversations were in the presence of the defendant, and, with possibly one exception, not necessary to consider, all related to what had been done or what it was proposed to do. The court permitted Paulsrud to testify to these conversations, and the charge quoted to the jury is in harmony with the theory that this evidence was admissible. The appellant urges that, even if the evidence as a whole was sufficient to justify the submission of the question of conspiracy between Dale and the defendant to the jury, the charge of the court was erroneous and the evidence inadmis-

sible, because it permitted the jury to consider declarations or statements made to the witness by Dale, not accompanying acts done in the prosecution of the offense, and which constituted no part of the *res gestæ*, but on the contrary were merely in regard to acts already done or others in contemplation. On the argument in this court, the state's attorney conceded that the part of the charge under consideration and the admission of the evidence to which it related were erroneous, and prejudicially so. It is, however, the duty of this court to investigate for itself in cases of this nature, and we have given the subject most careful consideration. After so doing we are unable to adopt the theory of the trial court.

Acts and declarations of conspirators who are not on trial are sometimes admitted in evidence against a co-conspirator who is being prosecuted. The principle upon which such acts and declarations are admitted in evidence is that by the act of conspiring together the parties doing so have generally assumed as a body the attribute of individuality as relates to the prosecution of the common design or purpose, and that what is done or said by any one in furtherance of that design is a part of the *res gestæ*, and therefore the act of all. They are also admissible on the ground of agency. Most authorities are to the effect that a prima facie conspiracy must be established before the declarations of the co-conspirator are admissible, though some hold that the order of proof relating to it is subject to the discretion of the trial court. If the acts or declarations of the co-conspirator are not in furtherance of the common purpose, they are not admissible in evidence. Declarations made prior to the formation of the conspiracy, or those made after its execution, and declarations made relating to what the conspirators propose to do, by a co-conspirator, and not in furtherance of the common purpose, are inadmissible. State v. Walker, 124 Iowa, 414, 100 N. W. 354; Nicolay v. Mallery, 62 Minn. 119, 64 N. W. 108; State v. McGee, 81 Iowa, 17, 46 N. W. 764; People v. McGarry, 136 Mich. 316, 99 N. W. 147; Spies v. People (the Anarchist Case), 122 Ill. 1, 3 Am. St. Rep. 320, 12 N. E. 865, and 995, note 4, 17 N. E. 898, 6 Am. Crim. Rep. 570, and cases cited therein; State v. De Wolfe, 29 Mont. 415, 74 Pac. 1084; State v. Thibeau, 30 Vt. 100, and cases cited in note thereto in Book 10 Vt. Rep. Anno.; People v. Stanley, 47 Cal. 113, 17 Am. Rep. 401; People v. Davis, 56

N. Y. 95; Lawrence v. State, 103 Md. 17, 63 Atl. 96; State v. Crofford, 133 Iowa, 478, 110 N. W. 921, Id., 121 Iowa, 395, 96 N. W. 889; Patton v. State, 6 Ohio St. 468; Fouts v. State, 7 Ohio St. 472. As this principle applies to the instructions of the court to the jury, it is apparent he wholly omitted to include the essential element that the declarations of the co-conspirator, even conceding the conspiracy to have been shown, must have been made in furtherance of the object of the conspiracy. This constitutes reversible error.

Applying this principle to the testimony of the alleged co-conspirator, it is enough to say that, with the exception of one question, which may have been proper, but which standing alone was entirely inadequate to connect the defendant with the crime, it may be divided into two classes: The first relates to certain acts of the defendant; the second to declarations of the alleged co-conspirator as to what arrangements he had made with the defendant, what was planned to be done, why it was to be done, and what had been done and the result. With the exception of the one question referred to, none of these declarations were pertinent to the carrying out or in furtherance of the enterprise. The witness and Dale met casually. They had a slight acquaintance. They took walks on the street together and conversed in the hotel, but the witness was not asked to and did not participate in any of the plans. The statements which he testifies Dale made were not made with a view of or to aid in carrying out the illegal conspiracy, if any existed. They were simply recitals of what had been done, and what it was proposed to do, without any disclosed purpose. They were also made without any opportunity for the defendant to cross-examine Dale, and not in defendant's presence. We are unable to discover any principle sustained by authority warranting the admission in evidence of these declarations, with the possible exception of two or three cases, where loose statements of the courts have indicated that statements of a co-conspirator were admissible, without distinguishing why admissible, and we think based upon facts making it unnecessary to do so.

It is urged by the state that the questions asked by it which elicited the testimony referred to did not furnish any indication that the answers would be incompetent, and that the questions were in themselves competent, and therefore the court did not commit error in allowing the witness to answer, and that defendant should have submitted motions to

strike out such answers, but, not having done so, the error, if any, was cured. This, of course, does not apply to or cure the error in the court's instructions which we have considered, and which was prejudicial; but, applying it to the testimony of the witness Dale, we think it is answered, even if abstractly correct, by the fact that after a few such questions had been propounded and answers given, it must have been apparent to the court and counsel what they all related to, namely, a conversation had between the witness Paulsrud and the third party, Dale, not in the presence of the defendant, and in relation to matters not in furtherance of the commission of the crime; at least this applies to a number of the obnoxious questions. Hence the failure to ask that the answers be stricken out did not cure the error. The acts which Paulsrud testified about were not all objectionable as evidence. Testimony as to what he saw the defendant do, bearing on the offense charged, was properly received, and also of some of the acts of Dale, for the purpose of establishing a conspiracy.

Error is assigned in permitting Dr. Engstad to give his opinion that it was unnecessary to procure a miscarriage. Dr. Engstad's examination was only superficial; he made nothing but a partial external examination, and when the girl informed him of her condition he went no further. This involves the question whether it was necessary for the state to negative the necessity for the operation. As this is not discussed in the briefs, we shall not pass upon it.

Error is assigned because Dr. Engstad was not permitted to testify in substance that it was not uncommon for women illegitimately pregnant to inflict injuries upon themselves, particularly upon the uterus, in an attempt to produce a miscarriage and conceal their condition. We do not pass upon the objections taken to questions of this nature, for the reason that the record shows similar questions were asked of experts and answered, and there is no conflict in the evidence on this point. An answer to this question, if in favor of appellant's contention, would only have been cumulative; hence, if it was error to sustain the objection, it was error without prejudice.

Dr. Engstad was asked on cross-examination to state whether an infection caused by an injury to the uterus might not remain dormant a greater or less period of time before it would spread out and give evidence of its presence. The state's objection to this question was

sustained. This ruling, we think, is correctly assigned as error. The defense submitted evidence tending to show that the time after the first meeting of the defendant and the girl was too short to admit of infection taking place then resulting in death on the morning of October 6th, and this question had a bearing on that issue. Error is assigned in permitting Dr. Engstad to state the conversation with Miss Lien when she called on him, where he gave her advice, and she promised not to have an operation performed. This ruling might be sustained on the same grounds on which the declarations of the third party, Dale, were held admissible, but the defendant had brought out part of the conversation between the girl and the doctor, and this entitled the state to show the whole conversation.

The fifth and sixth assignments of error relate to the sustaining of the state's objection to the following questions, asked one of the experts: "Q. Don't you know that the text-books dealing with obstetrics and gynecology lay it down as a fact of not uncommon occurrence for a woman in a pregnant condition to inflict injuries upon the walls of the uterus and cause similar conditions to those which were presented by the uterus described in this case?" and "Q. Does not Hearst say in his text-book that injuries to the internal walls of the uterus resulting in septicæmia may be inflicted, and in fact not uncommonly are inflicted, by the pregnant woman herself?" These questions were propounded to Dr. Larson, who conducted the autopsy. He was a most intelligent witness, but his experience was limited, and his testimony was based very largely upon knowledge gained from reading rather than from experience. Had these questions been submitted for the purpose of eliciting information as to the contents of text-books primarily, the ruling of the court might be, and doubtless would have been, correct, but it is now claimed that they were submitted solely for the purpose of testing the accuracy of the witness's knowledge and the correctness of his conclusions as an expert, that necessarily his opinions were based upon reading medical works, and that their bearing was upon the weight which should be given his testimony. If this was the reason assigned in the trial court, the ruling was error.

The fourteenth assignment of error relates to defendant's request, that the court instruct the jury that if the defendant inflicted a mortal wound upon Gina Lien, after an abortion or miscarriage had been ac-

complished, while trying to give relief from the effect of the abortion or miscarriage, then he is not guilty of the crime, even though he unlawfully procured the abortion without any necessity therefor. In view of the whole record this assignment can be disposed of by stating that we are agreed that the charge of the court, as given, adequately covered this ground. The last error assigned is that the court should have advised the jury to acquit the defendant for the reasons stated in his motion to that effect made at the close of the trial. The substance of the reasons given was that the state had failed to present facts sufficient to warrant a conviction. A careful reading of the entire record satisfies this court that it shows a sufficient conflict in competent evidence to justify its submission to the jury, and that the denial of defendant's motion was not error.

We have discussed the questions raised on this appeal in a somewhat general way, because to cover details would make it necessary to include in this opinion many pages of unsavory testimony, and extend it to an undue length, without any compensating clearness in giving the reasons for our conclusions.

For the reasons stated, the order of the District Court denying a new trial is reversed, and a new trial granted. All concur.