263 So.2d 181

Johnny W. POELLNITZ

v.

STATE.

I Div. 67.

Court of Criminal Appeals of Alabama.

May 30, 1972.

Samuel L. Stockman, Mobile, for appellant.

William J. Baxley, Atty. Gen., and J. Victor Price, Jr., Asst. Atty. Gen., for the State.

PER CURIAM.

The indictment in this case charged the appellant with burglary in the second degree. The appellant entered a plea of not guilty. The trial resulted in a verdict of guilty and a judgment in accordance therewith. The appellant's motion for a new trial was overruled by the trial court. Hence, this appeal.

R. L. Morris, a patrolman with the Prichard Police Department, testified in substance that at about 12:05 A.M., March 6, 1968, he and Officer Pitts were on patrol and he noticed a car coming toward him with one headlight out and another car following it; that he turned around and stopped the car which had one light out; that the car following this car pulled over to the other side of the road; that the appellant was driving the car the officers stopped and he stated there was a short in his light and he beat on the fender and the light came on; that the appellant told him he

worked in the shipyard in Mississippi and was on the midnight shift and was running late for work; that about 3:30 or 3:45 A.M. that same morning he again saw the same two cars; that he and Officer Pitts followed the two cars again; that appellant's car was a 1963 Chevrolet and the other car was a 1960 Chevrolet; that they tried to stop the cars; that appellant did not stop but the other car did; and that he, Morris, got out and remained with the 1960 Chevrolet and Officer Pitts drove on after the 1963 Chevrolet. That witness then testified in substance that he checked the 1960 Chevrolet; that there were five new tires in the back seat of it; that the tires were wrapped with paper bearing trade marks; that the tires were not otherwise covered up; that he did not remove the tires in order to identify them; that they were clearly visible in the back seat of the car; and that the appellant was not in that car but in the other car. The appellant moved to suppress the evidence about finding the tires on the ground the Officer did not have a search warrant and the car in which they were found was not in the possession of the appellant. Thereupon the court asked the witness several questions and in answer thereto the witness testified in substance that at that time a city detective contacted him about a burglary of a service station and he checked the labels on the tires and verified the brands as those of the service station which had reportedly been burglarized.

That witness also testified in substance that Officer Pitts accompanied by appellant returned to the place where the 1960 Chevrolet and the 1963 Chevrolet were stopped; that appellant was driving the car; that they looked in the 1963 Chevrolet and saw a screwdriver and that they, the officers, took possession of both cars, the tires and the screwdriver; that the screwdriver was visible without a search; that the drivers of the two cars were arrested and carried to jail; and that appellant's car was carried to the police station along with the other car. The appellant objected to the

admission of the evidence concerning the tires and the screwdriver and his several objections in that respect were overruled by the trial court.

Officer Terry W. Pitts of the Prichard Police Department testified substantially to the same events to which R. L. Morris had testified.

Detective Andrew Gray Hildreth of the Prichard Police Department testified in substance that at about 4:00 A.M., on March 6, 1968, he had a two-way radio conversation with Officers Pitts and Morris; that at the time he was receiving this call from Morris to meet him at the point where Morris was that he observed the front door of a service station open; that the station was in Prichard; that he checked the station and found the door had been pried open and the cigarette machine had also been pried open; that he called Morris and Pitts and asked them about the merchandise in the car; that he called the owner of the service station and waited until he came to the station; that he then told Morris and Pitts to take the subjects into custody; that when the owner of the station arrived he talked with him relative to the merchandise missing from the station; that he saw the two cars at the police station and the tires in one of them and that the tires were wrapped in "Pure stickers". and were removed from the car and put in the detective room; that Officer Morris turned the screwdriver over to him and that the screwdriver had been in his custody ever since; that the owner of the station came down to the police station and saw the screwdriver and the tires; that the tires were delivered by the police to the owner of the station broken into after he gave the police a receipt for them; and that this witness kept the screwdriver and identified it in court.

William Richard Wileman testified in substance that he was the manager of a service station which he leased from Pure Oil Company at the corner of Wolf and St.

Stevens Roads; that he sold oil, gas, tires and batteries at the station; that in the early morning hours of March 6, 1968, he received a call that his station had been broken into; that he went to the station and two or three police officers were there; that the station had been broken into and the cigarette machine had been broken open and five tires were missing from the tire rack; that he went to the police station and identified the tires which were taken from the back seat of the car as belonging to him; that he identified the screwdriver which was taken from appellant's automobile as belonging to him; that his screwdriver was missing from the service station and it was identical to the one the police had taken from one of the cars; that he got his inventory list and serial numbers and took them down to the police station and they matched those on the tires and he got his tires from the police; and that the police kept the screwdriver. The screwdriver was admitted in evidence.

When the State rested, the appellant's motion to exclude the evidence on the ground that the State had not made out a prima facie case was denied by the trial court.

The substance of the evidence on behalf of the appellant was an alibi and also a denial that he committed the offense charged. He stated he saw the officers about 12:05 A.M. and generally confirmed their testimony as to that meeting but denied he knew anything about the other car or its driver at that time. He stated that he was on his way to work when the officers stopped him the second time; that Jerome Bettis was driving the car which had the tires in it when the officers stopped him the second time about 4:00 A.M.; that Bettis was his nephew; and that he had not seen him that night until the second time the officers stopped him. He also said that the screwdriver which the officers took from his car which was admitted in evidence was exactly like one he bought in Mississippi; and that the one he had was

in his car when they stopped him. His mother testified in his behalf and stated that she had been with him during the entire night except for a few minutes about midnight when she sent him to the store for some ribs to cook; and that he left her home about 4:00 A.M., in the morning.

One of the grounds of the appellant's motion for a new trial was:

"34. For that the juror, Marvin R. Courtney, was disqualified to sit as a juror and render a fair and impartial verdict in the case."

Another ground of that motion stated the complaint in this manner:

"35. For that the juror, Marvin R. Courtney, was not qualified to sit as a juror in this case under the qualifications and questions propounded to the jury prior to the trial, which fact was not made known to the parties or their attorneys or to the Court prior to the trial of the case."

On the hearing of the motion for a new trial evidence was taken relating to those two grounds of said motion. The trial court in qualifying the jury in this case stated to them that the appellant was charged with burglary in the second degree and asked, "Is there any reason why you could not sit on the jury in the trial of this case and render a fair and impartial verdict, based on the law and the evidence?" The appellant's counsel asked the court to propound to the jurors, "for information purposes," the following questions:

"If any of the jurors have been involved in the prosecution of a burglary or larceny case?

"Have any of you had any homes that have been broken into?"

In answer to those questions one juror stood and indicated her home had been broken into but stated that would not bias her verdict and that she could render a fair

and impartial verdict based on the law and evidence. She was not challenged by appellant's counsel.

On the hearing of the motion for a new trial Marvin Courtney testified in substance that he served on the jury in a trial of the appellant; that he did not respond to the questions prounded by the trial judge in the qualification of the jurors; that he had been robbed on one occasion; that he did not inform the trial judge of that fact; that in the trial of the appellant's case he was not influenced in any way by the fact that he had been the victim of a robbery; that the trial judge in the instant case did not ask him if he had been involved in a robbery; that the trial judge did ask if he could fairly and impartially try the case and that he responded in the affirmative; and that he did render a verdict based on the evidence in a fair and impartial manner. That witness admitted that on Tuesday of the week the appellant was tried he was among the jurors being qualified in a robbery case and he was asked if he had been robbed and he stated that he had been robbed and that this fact might influence his verdict in that case and he was excused on challenge.

Appellant complains that the juror Marvin Courtney was not qualified to serve on the jury and that the motion for new trial should have been granted by the trial on the grounds set out in said motion. With that complaint we do not agree. The facts in this case do not present a situation in which a statutory cause for challenge arises. Tit. 30, § 55, Code of Alabama, 1940, Recompiled 1958.

Tit. 30, § 56, Code, supra, states:

"Of the causes of challenge specified in the last preceding section, the first four may be proved by the oath of the person summoned, or by other evidence; the fifth and sixth by other testimony only; the seventh by the oath of the person alone; and the others as the court may direct."

There is no proof in this case that the juror named had any interest in the conviction or acquittal of the appellant or that he was biased or prejudiced against him by reason of the fact that he had been a victim of robbery. Robbery is an offense against a person and his property. Burglary in the second degree is an offense against property. Therefore one who has been the victim of a robbery may have some bias in a robbery case and be absolutely unbiased in a second degree burglary case where there was no personal danger or offense.

Mr. Courtney was not asked on the qualification of the jury if he had been the victim of a robbery. He was not then asked any question calling for that information. He was therefore under no obligation to disclose it unless it would have prevented him from rendering a fair and impartial verdict or unless it created bias in his mind against the appellant or created in him an interest in the conviction of the appellant. The evidence taken on the motion for a new trial clearly does not show any of these things. The action of the trial court in that respect is without error.

Appellant also complains that his motion to exclude the State's evidence made at the time the State rested should have been granted and the evidence relating to finding the tires in the back seat of the automobile driven by and in possession of a person other than himself should not have been admitted in evidence. We shall consider these two complaints together for the reason that the law relating to them, under the facts in this case, is interwoven.

In Livingston v. State, 44 Ala.App. 559, 216 So.2d 731, this Court stated:

"The later proof adduced after the State rests must be mentally laid aside because the evidence before the trial court as of the time of the motion to exclude is all that we can consider in reviewing the trial court's overruling that motion. In so doing, however, we view it in the light most favorable to the State."

Following the rule laid down in that case we here epitomize the evidence at that point of time.

First, the two cars in question were seen by the officers traveling in close proximity to each other at about 12:05 A.M. on the night in question and when the officers stopped the appellant, then driving the car in front, the other car pulled over to the other side of the street and stopped. The appellant then stated he was going to work and was late for work.

Second, some three and one-half or four hours later that same night the same officers again saw the same two cars traveling in the same direction and again close together. The appellant was driving one of the cars on each occasion and on the second occasion when the officers made an effort to stop the cars the appellant did not stop but the other car containing the tires did, and appellant was overtaken by one of the officers and returned to the point where the other car was stopped.

Third, plainly visible in the car driven by the appellant was the screwdriver which was introduced in evidence in this case and the owner of the filling station testified it was identical to the one taken from his filling station in the burglary.

Fourth, while the officers were at the scene where they had returned the appellant on the second occasion, they received information that the filling station in question had been broken into and entered and that certain items were missing from it. It was a Pure Oil Station and the tires which were plainly visible in the back seat of the car driven by a person other than the appellant had trade marks on them.

Fifth, the detective who observed the filling station and the fact that it had been broken into and ascertained from the owner that five tires were missing from the station, instructed the officers at the scene where the appellant had been stopped to take the appellant and the other person in custody.

Sixth, the owner of the service station burglarized checked the tires and their numbers with his inventory and list and found them to be his tires taken from his station in the burglary.

Seventh, in the light of all the circumstances—the tires taken from the service station in one car; the screwdriver, identical to the one taken from the service station in the burglary, in appellant's car; the two cars traveling in the same direction on two separate occasions on the same night at a very late hour; and the flight of appellant—taken in the light most favorable to the State would place the ownership of the screwdriver in the owner of the service station and would, therefore, be an item of personal property taken from the service station at the time of the burglary.

Eighth, the service station mentioned in the indictment was burglarized and five tires and a screwdriver were taken therefrom in the burglary, the property of the owner thereof.

At the time the State rested the evidence before the trial court taken in its most favorable light in behalf of the State was sufficient to place the appellant in the position of being either a principal in the first or second degree as to the offense charged in the indictment under the common law.

Tit. 14, § 14, Code, Supra, provides:

"The distinction between an accessory before the fact and a principal, between principals in the first and second degree, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must hereafter be indicted, tried, and punished as principals, as in the case of misdemeanors."

That section of the code would place the appellant and the other person in a position of equal guilt.

In Davis v. State, 36 Ala.App. 573, 62 So.2d 224, cert. denied 258 Ala. 281, 62 So. 2d 229, the court quoted the following from Martin v. State, 89 Ala. 115, 8 So. 23:

"Conspiracy, or a common purpose to do an unlawful act, need not be shown by positive testimony. Nor need it be shown that there was prearrangement to do the specific wrong complained of."

In Jones v. State, 174 Ala. 53, 57 So. 31, which has been followed in many other decisions in this State, the court said:

" 'When by prearrangement, or on the spur of the moment, two or more persons enter upon a common enterprise of adventure, and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out each is guilty of the offense committed, whether he did any overt act or not. This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting . . . the active perpetrator in the commission of the offense is a guilty participant, and, in the eye of the law, is equally guilty with the one who does the act. . . .' Morris v. State, 146 Ala. 66, 88, 41 So. 274, 280."

The rule of evidence applying to such a situation is stated in Edwards v. State, 279 Ala. 371, 185 So.2d 393, in this manner:

" ' . . . The principle of law to be stated is that, where a conspiracy is established, any act or declaration of a conspirator made or done in furtherance of the common design is admissible in evidence against a co-conspirator, although not made or done in the presence of such co-conspirator. . . .' " [West v. State, 168 Ala. 1, 53 So. 277.]

. . . . . .

" ' . . . The principle upon which such acts and declarations are admitted in evidence is that by the act of conspiring together the parties doing so have generally assumed as a body the attribute of individuality as relates to the prosecution of the common design or purpose, and that what is done or said by any one in furtherance of that design is a part of the *res gestae*, and therefore the act of all. They are also admissible on the ground of agency. . . .' State v. Moeller, 20 N.D. 114, 120, 126 N.W. 568, 571."

The *Edwards* case, supra, does hold that such acts and statements made after the completion of the offense and the conspiracy ends are not admissible against another involved in the offense.

In the instant case the ends of the conspiracy had not been accomplished in all of its details in that the property taken was still being transported away from the filling station and had not reached its final intended resting place. In other words the scheme was still in progress when the two cars were stopped and the tires recovered by the officers.

Under the facts in this case and the law as set out herein the fact that the tires were in the car driven by appellant's co-conspirator and the evidence relating thereto was admissible in evidence unless their being recovered by the officers was the result of an unlawful search and seizure.

In Kelley v. State, 39 Ala.App. 572, 105 So.2d 687, the court states:

"A search implies a probing into secret places for that which is hidden, People v. Exum, 382 Ill. 204, 47 N.E.2d 56; it implies force, actual or constructive, Combest v. State, 32 Okl.Cr. 47, 239 P. 936; or a forcible dispossession of the property of the owner by exploratory acts.

"A mere observation of that which is in full view is not a search. . . ."

Since the tires and screwdriver were in full view in the case before us there was not an illegal search. The officers' testimony about seeing the tires in the car and what was done with them was admissible. The same rule applies to the screwdriver.

Therefore, there was substantial evidence of the guilt of the appellant at the time the motion to exclude the evidence was made and said motion was properly overruled. The ruling of the trial court admitting the screwdriver in evidence and permitting the officers to testify about finding the tires in the car driven by a co-conspirator of appellant at the time in question and the other evidence relating to the tires was without error.

■ After the jury was instructed and took the case under consideration the record discloses the jury returned to the courtroom and, among other things, the following transpired:

"COURT: I understand you Gentlemen of the Jury have something to say to the Court.

"FOREMAN: We are in a deadlock. We have ballotted back and forth, and we are hopelessly deadlocked.

"COURT: I am sorry. It is just 3:45 P.M. and you have had the case since about 2:15. I cannot discharge you on that, now. You will have to resume your deliberations. If there is any question which the Court can help you on, I will be glad to try to help you, but I cannot discharge you now.

"FOREMAN: Naturally, there are questions, but I don't think the Court can help.

"COURT: I can't go into the question of fact. As I said, you gentlemen are the sole judges of the facts. If there is any question of law I will be glad to try to straighten you out.

"FOREMAN: I don't want you to think that we haven't really been expressing our views.

"COURT: I understand.

"Note: At 5:00 P.M. the Court sent for the Jury and stated, 'Ladies and gentlemen, I understand that you are nowhere close to arriving at a verdict.'

"FOREMAN: Your Honor, we find ourselves moving closer.

"COURT: But you have not arrived at a verdict yet?

"FOREMAN: No, sir.

"COURT: I think the better thing to do is to recess for the night, so I declare a recess tonight and order you back at 9:30 AM.

"Note: At 9:30 AM on October 9 the trial resumed as follows:

"COURT: Ladies and gentlemen of the Jury, it is desirable and important that you agree upon a verdict, and you are urged to make every effort to do so, persistent [sic] with your conscience. You are advised to lay aside mere pride of judgment and not to adhere. to an opinion in regards to what the other jurors may say merely through contimation [sic], but you should examine any difference together in a spirit of fairness and candor and to reason together and talk over such differences and harmonize them if it is possible. You are further urged as a reason for reaching a verdict to consider the expense and the time involved in this trial and the time and expense which another trial would entail. You should not and you will not be censored for not agreeing with the majority, but, if you can reach a verdict without any sacrifice of principle or conviction, we would be glad for you to do so. You may retire, ladies and gentlemen.

"MR. STOCKMAN: We except to the Court's additional charge.

"COURT: You have the right."

The jury later returned a verdict of guilty as charged in the indictment.

Complaint is made on this appeal that the charge set out above is error. We do not agree with that complaint. In the case of Ashford v. McKee, 183 Ala. 620, 62 So. 879, it is stated:

. ."... The trial judge is vested with large discretion in the conduct of judicial proceedings, and he may properly admonish the jury as to the desirability and importance of agreeing on a verdict, and may urge them to make every effort to do so consistent with their consciences. He may advise jurors to lay aside mere pride of judgment, and not to adhere to an opinion regardless of what the other jurors may say, merely through stubbornness, to examine any existing difference in a spirit of fairness and candor, and to reason together and talk over such differences and harmonize them, if possible. So, also, the court may urge as reasons for agreeing on a verdict the time and expense which a new trial would entail. But it is not proper to give an instruction censuring jurors for not agreeing with the majority."

The charge of the court to which an exception was taken is supported by the law of this State. Error does not appear in that respect.

We have searched the record as is our duty and find no error therein.

It is ordered and adjudged by this Court that the judgment in this cause be affirmed.

The foregoing opinion was prepared by L. S. Moore, Supernumerary Circuit Judge, and adopted by this Court as its opinion.

Affirmed.

All the Judges concur.