LEIGH M. CLARK, Retired Circuit Judge.
Appellant was tried on an indictment charging her with murder in the first degree of J. P. Carmack, by shooting him with a pistol. A jury found her guilty of murder in the second degree and fixed her punishment at imprisonment for twenty-five years. She was sentenced accordingly.
Defendant was represented on the trial by employed counsel. After her conviction, she was declared an indigent; she is represented on appeal by counsel appointed by the court, who did not represent her on the trial.
Most of the material facts are undisputed. Defendant had driven an automobile to the drive-in window of Milo’s Hamburgers in Birmingham and had opened the door of the automobile on the driver’s side; Mr. Carmack was standing near the drive-in window and had some difficulty in getting to or from the window on account of the open door of the automobile. He made *2 some remarks about the open door, and then he partially or completely closed it himself. Defendant obtained a pistol from the glove compartment of the automobile and shot Carmack, the bullet entering his “right flank, meaning to the right back below the ribs,” severing the inferior vena cava and lodging underneath the skin of the victim’s left side. He was promptly taken to the hospital and died on the operating table.
Three witnesses for the State said they heard Carmack ask defendant to close the door of the automobile. Their testimony was to the effect that he did not ask her in a rude manner. One of them did not thereafter observe defendant, or Carmack, until the shot was fired. Two of them testified that defendant told Carmack not to close the door but that Carmack either completely or partly closed it. One of these witnesses testified that defendant then got out of the automobile and shot Carmack. The other did not see where defendant was at the time she fired the pistol.
The only witness for defendant on the trial was her sixteen-year-old sister, Sharon Brooks, who was in the automobile with defendant at the time they arrived at Milo’s Hamburgers. She testified that defendant, twenty years of age at the time, had taken her in the automobile, which belonged to their brother, to a dentist and thereafter went to the hamburger place, drove up to the drive-in window, where defendant “got out of the car to ring the bell” and give her order, and then “got back into the car and left the door open.” Then a Mr. Thompson, a witness for the State, went to the window and was followed there by Mr. Carmack, who said to Mr. Thompson, “Why don’t you close that damn door?” and thereafter said, “The — damn niggers always trying to take over.” She said that Carmack walked up to the door and said, “Close this damn door,” took the door with his hands and pushed the door, that defendant had one leg outside the door and the other inside; that defendant’s leg was caught in the door and that she and defendant attempted to push the door off defendant’s leg and Carmack continued to push or shove the door to close it and in doing so he used “his rear end” and that defendant reached into the glove compartment, took the gun therefrom and shot Carmack from inside of the automobile, at which time she said that Carmack had his “rear end side” against the door.
The evidence was sufficient to support the verdict of the jury, and no contention is made to the contrary.
Appellant urges as error the trial court’s action in overruling defendant’s motion for a new trial, in which defendant set forth as ground 7 the following:
“For that jury venireman number 234, Norman J. Wehby, failed to respond to the following question propounded by attorney for defendant during voir dire: ‘Has any member of the jury venire been the victim of a crime of violence?’ Defendant alleges and believes that venireman Wehby, who became a member of the jury, had, at a time prior to trial, been the victim, in his capacity as Manager of Parisians, Inc., of a shoplifting attempt wherein he was required to participate in the physical restraint of the perpetrators of the attempt (who were black persons), and that, because of the nature of this specific shoplifting attempt, said Norman J. Wehby had in fact been the victim of a crime of violence. “Said venireman Wehby’s failure to answer the above question prejudiced defendant’s right to examine jurors as to their interests and bias and to have a fair trial by impartial jury.”
Testimony was taken on the hearing of the motion, particularly as to ground 7. Mr. Wehby testified that about a year before the testimony, while he was the manager of a department at Parisian’s, two black males were detected by someone else in the act of shoplifting in the store and that as he saw them running out of the store, he ran after them. He did not touch them; others restrained them and held them for the police. He further testified that he had forgotten about this incident until reminded of it upon being interrogated about it in connection with the motion for a new trial.
*3 According to the evidence on the hearing of the motion for new trial, the juror had not been “the victim of a crime of violence” and could not truthfully have made an affirmative response to the question asked him on the subject. His failure to respond to the question furnishes no basis for complaint. Thomas v. State, Ala.Cr.App., 338 So.2d 1045; Flurry v. State, 52 Ala.App. 64, 289 So.2d 632, writ denied, 292 Ala. 720, 289 So.2d 644; Poellnitz v. State, 48 Ala.App. 196, 263 So.2d 181.
Appellant’s argument, that since the perpetrators of the “incident in which Mr. Wehby was involved were black . and Appellant is black, . . Mr. Weh-by was not impartial and therefore, his service on the jury” was a violation of defendant’s right to an impartial jury, finds no support in the record and is pressed no further than the bare assertion thereof. The trial court was not in error in overruling defendant’s motion for a new trial.
At the conclusion of the court’s oral charge, defendant’s counsel announced several objections or exceptions. In most of such instances, we feel there was no meeting of the requirement that the objector or exceptor select and recite what the court said, or state the substance of what the court said, and thereby specifically bring to the attention of the court and the appellate court the matter and ruling as to which complaint is made. Fuller v. State, 269 Ala. 312, 113 So.2d 153; Knight v. State, 273 Ala. 480, 142 So.2d 899; Ward v. State, 52 Ala.App. 392, 293 So.2d 307; Burns v. State, 57 Ala.App. 281, 327 So.2d 920, cert. denied, 295 Ala. 423, 327 So.2d 927; Magourik v. State, Ala.Cr.App., 339 So.2d 168.
The only part of the court’s oral charge which may have been sufficiently particularized by an exception or objection (but whether it was is unnecessary to decide) and which, standing alone, could reasonably be claimed to have been prejudicial to defendant is referred to in defendant’s objection as follows:
“We object to his definition of self-defense in that he did not state that it must be real or apparent. She does not have to be in serious—facing serious or grievous bodily harm or death actually, but it only need be apparent. She need believe in her mind after considering all the circumstances that she is in real or apparent danger to life of body.”
In two parts of the court’s oral charge, in referring to the imminent danger that must exist before one can legally take the life of another in self-defense, the court did not say that the requisite danger could be either real or reasonably apparent. However, immediately after first calling the jury’s attention to such imminent danger requirement, the court said:
“Now, the law says this in that regard, that a person may act upon the reasonable appearance of things. That is, if the situation which has presented itself would appear to a reasonable person— and reasonable, that term reasonable I am going to use that many times. That just means—you know what it means. I don’t have to explain what reasonable means. But the appearance of things would show reasonably, to a reasonable person that they were, in fact, in danger of losing their own life or of having grievous bodily harm committed to them by the act of another, then that person may act on that reasonable appearance of things even if they were not actually so and in such danger of losing their own life or of having grievous bodily harm committed upon their body.”
In saying that there must be danger, the court did not make the error of saying the danger must be real. The objection was not to what the court said but to what it “did not state.” Whatever a particular part of a court’s charge may lack may be adequately supplied by its presence in another part of the charge. No part is to be tested in isolation, but the court’s charge is to be considered as a whole. Whittle v. State, 205 Ala. 639, 89 So. 43; Mosley v. State, 241 Ala. 132, 1 So.2d 593; Gosa v. State, 273 Ala. 346, 139 So.2d 321; Nixon v. State, 268 Ala. 101, 105 So.2d 349; Smith v. State, 36 Ala.App. 646, 62 So.2d 473.
*4 We have searched the record for error prejudicial to defendant and have found none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.